## A89A2086. BUTLER v. THE STATE.
(392 SE2d 324)

COOPER, Judge.

Appellant was indicted on seven counts, five of which are involved in this appeal. Count 3 alleged assault with a knife; Count 4 alleged assault with a stick by forcing it into the victim's anus; Count 5 was for assault with a stick by forcing it into the victim's vagina; Count 6 was a charge of assault with intent to rape; and Count 7 alleged false imprisonment. Appellant was tried by a jury and convicted on all counts. Appeal is taken from the convictions and sentences on Counts 4, 5, 6 and 7. Because the issue of the sufficiency of the evidence has been raised, it is necessary to recount the acts for which appellant was tried.

At 10:15 a.m. on August 30, 1988, the victim, a 29-year-old married mother with two children who worked as a sales representative for a trucking company, went to the Atlanta-Fulton County Stadium to buy baseball tickets for her customers. As she returned to her locked car, appellant approached her from behind, put his arm around her shoulders and stuck something hard in her rib cage. Telling her that he had a knife and not to scream, appellant forced the victim into the car. He told her that if she listened to him and did not scream or try anything, she might live. Holding the knife at her side, he ordered her to drive, and he directed her to an undeveloped wooded area. Pulling and jerking her into the woods, appellant ordered the victim to get down on her knees and pray that he was in a "nice" mood. He then ripped off her skirt, slip and pantyhose, and hitting her in the back several times with a large stick he pulled off a tree and kicking her, appellant forced the victim to "get on all fours." Appellant began to repeatedly ram the stick into the victim's anus, telling her to "shit until it hurts" because he wanted to see if hers "stunk as bad as his." He did not stop moving the stick until she defecated. Next, appellant jerked the victim back on her feet and ripped off her sweater and bra. Telling her he would cut off her breasts because they were so small she did not need them, appellant tortured the victim by circling her breasts with the knife and running it up and down her body. After he cut her leg, he told her that "everybody deserved one more fling before they died," and threw the victim down on the ground again. He got down on the ground with her, and using the same stick, shoved it into the victim's vagina several times. While still sitting on the victim's face with the knife at her throat, appellant forced the victim to masturbate. Appellant then ordered the victim to dress, and shoved and jerked her out of the woods and across the street. When she fell down a hill into a drainage pool of filthy water, appellant held her head under water. Appellant suddenly released her and the victim saw him running away. When she

struggled up the hill, the victim spied a telephone company employee who then summoned police. The victim described her assailant as wearing a red T-shirt with a gold eagle emblem and some writing on it.

On August 25, 1988, a residential burglary had been reported to the DeKalb County police in which a number of T-shirts for a company softball team had been taken from the team manager's house. The shirts, which were specially designed for the manager's team, were either red or white, and some of the red shirts had an eagle emblem on the front. When the softball team manager filed an itemized list of the items taken in the burglary with the police, they realized that these red shirts were similar to the one described by the victim, and subsequent investigation led to appellant becoming a suspect. On the day of the incident, the victim tentatively identified appellant as the man who attacked her from a display of black and white photographs, and shortly thereafter, at a subsequent display of color photographs, she immediately and unequivocally identified appellant. Appellant was arrested at his apartment on August 31, 1988, two miles from the area where he took the victim and a block from where the burglary occurred. A red T-shirt and a knife as described by the victim were found there and seized by the police. On September 6, 1988, the victim identified the appellant as her attacker at a physical lineup.

1. Appellant contends that Counts 4 and 5, both of which charge him with aggravated assault with a stick, albeit involving separate orifices, constitute only one offense. We do not agree. In *Davis v State*, 186 Ga. App. 491 (2) (367 SE2d 884) (1988), relied on by appellant, a series of shots fired by the defendant while chasing the victim was held to be a continuous and uninterrupted act. Here, however, the act of brutalizing the victim with the stick in her anus was a completed crime before the assault with the stick in her vagina began. Appellant's avowed purpose in the anal assault was accomplished when the victim defecated. The victim was then jerked off the ground, further unclothed, taunted, tortured and injured before being pushed back to the ground and vaginally assaulted. Thus, "the jury was authorized to find from the victim's testimony that each episode was a separate and complete offense [and] that each episode of [aggravated assault] had ended and was followed by some other activity before the next episode began. 'The . . . crimes charged here were completed one after the other, but are separate and distinct. (Cit.) Although occurring sequentially, one after the other, each of these transactions constituted a separate offense since each was established by proof of different facts; i.e., each offense was a completed crime when the next was perpetrated upon the victim. (Cit.) Under the circumstances of this case, the same conduct is not being punished twice nor is one act included

in the other so as to proscribe the separate conviction and punishment for each act. (Cit.)' [Cit.]" *Cardoza v. State*, 183 Ga. App. 170, 171 (1) (358 SE2d 315) (1987).

2. In response to appellant's second enumeration, we conclude that the evidence was sufficient to support the verdict of guilt for assault with intent to commit rape. Notwithstanding our disagreement with appellant that the crime of rape is sexually motivated, the fact that appellant did not actually have carnal knowledge of the victim as defined by OCGA § 16-6-1 is immaterial to his conviction of aggravated assault with intent to commit rape. "(S)ince assault is an 'attempted' battery, there must be a substantial step toward committing a battery before there can be an assault [OCGA § 16-4-1]. The 'substantial step' requirement thus relates to the first essential element of [OCGA § 16-5-21], the assault, and not to the second element, the intent to rape. The crime of aggravated assault with intent to rape is complete when there is a 'substantial step' toward a battery of the victim, i.e., an assault, coupled with intent to rape . . . [Cits.]' [Cits.]" (Punctuation and emphasis omitted.) *Young v. State*, 181 Ga. App. 587, 588 (353 SE2d 82) (1987). " 'It is not necessary for the [S]tate to show that appellant expressed an intent to (rape) in so many words, or declared a purpose to carry the intent into effect, for the jury to arrive at the conclusion he so intended. The intention may be gathered from the circumstances of the case as proved.' [Cit.]" *Rucker v. State*, 177 Ga. App. 779, 781 (2) (341 SE2d 228) (1986). Whether appellant intended to rape the victim was a matter for the jury to determine and, as a general rule, the State must of necessity rely upon circumstantial evidence. *Kinney v. State*, 155 Ga. App. 95 (1) (270 SE2d 209) (1980). Here, not only did the appellant tell the victim that "everybody deserved one more fling before they died," he ripped off all her clothes and made disparaging remarks about the size of her breasts, as well as forcing her to masturbate. Thus, "[t]here was evidence, although circumstantial insofar as intent is concerned, sufficient to establish that the defendant assaulted the victim with intent to commit rape; a rational trier of fact was authorized to find the defendant guilty of the crime charged beyond a reasonable doubt. [Cits.]" *Williams v. State*, 185 Ga. App. 633, 634 (3) (365 SE2d 491) (1988).

Nor do we agree that Count 6 merged with Counts 3, 4 and 5, because there was sufficient evidence of four separate assaults based on multiple instances of criminal behavior. Based on the evidence, we conclude that appellant's acts which we have held above constitute an assault with the intent to commit rape are separate and distinct from each separate assault with the stick as well as from the acts constituting an assault with a deadly weapon, the knife. "The conclusion to be drawn from the fact that [none of these offenses] can be proved by

only the same facts proving the other['s] is that [none] is included in the other['s] as a matter of law." *Kirby v. State*, 187 Ga. App. 88, 89 (2) (369 SE2d 274) (1988).

3. Finally, appellant argues that the count of false imprisonment was merely incidental to the other crimes charged in the indictment and is not a distinct offense which can be punished separately. This contention is clearly belied by the evidence. There was false imprisonment shown as contemplated by OCGA § 16-5-41 (a) in that appellant "confined" and "detained" the victim from the time he grabbed her from behind and stuck the knife in her ribs until he began the actual physical assaults upon her. "Under these circumstances, it cannot be said that the [S]tate 'used up' the evidence establishing false imprisonment in proving the [other charges]. [Cits.] Each offense was established by proof of separate and distinct facts . . . ." *Gilbert v. State*, 176 Ga. App. 561, 563 (2) (336 SE2d 828) (1985). Appellant's enumerations of error are without merit.

*Judgment affirmed. Deen, P. J., and Birdsong, J., concur.*

DECIDED MARCH 15, 1990.

*John D. McCord III*, for appellant.

*Robert E. Wilson, District Attorney, R. Stephen Roberts, Desiree L. Sutton, Assistant District Attorneys*, for appellee.