## A98A1630. MANGHAM v. THE STATE.
(507 SE2d 806)

Ruffin, Judge.

A jury found Donald Mangham guilty of burglary and aggravated assault with intent to rape. On appeal, Mangham asserts (1) the trial court erred in admitting evidence of his prior aggravated sodomy conviction and (2) there is insufficient evidence of intent to support his convictions. We affirm.

" 'On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the appellant (defendant here) no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia,* 443 U. S. 307 (99 SC. 2781, 61 LE2d 560) [(1979)]. Conflicts in the testimony of the witnesses, including the State's witnesses, (are) a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.' [Cit.]" *Shabazz v. State,* 229 Ga. App. 465-466 (1) (494 SE2d 257) (1997).

Viewed in this light, the record shows that on August 10, 1995, Mangham and Greg Wilson joined a group of people standing in the road in front of the victim's home. The victim, a 17-year-old female, joined this group and met Mangham for the first time. Later that evening, one of the victim's female friends began dancing and took off her shirt and shorts. She did not remove her bra and underpants. The victim danced with her friend, but did not remove any of her clothing. Mangham and Wilson were present during the dancing.

After dancing for approximately 15 to 20 minutes, the victim went inside her home to go to bed. Mangham and Wilson walked two of the victim's female friends home, including the one who had removed her clothing while dancing. Wilson then returned to the victim's home and, while standing outside her bedroom window, offered her money for oral sex. The victim declined, and Wilson left. After Wilson's departure, the victim heard people talking outside, but she "couldn't understand what they were saying." Since she "didn't feel right," she closed and locked her bedroom window and let the blind down.

Approximately ten to fifteen minutes later, between 1:00 and 2:30 a.m., the victim heard a noise from her grandmother's bedroom window. She went to her grandmother's room and noticed that a fan had been removed from a window in the bedroom. She also saw Mangham climbing through the window with an oak stick in his hand. The victim hit Mangham with a stick used to hold the window open, but he "just kept coming." The victim then ran outside into the

street and screamed for help. Mangham chased her and grabbed her by the hair. After the victim fell, Mangham dragged her across the pavement toward an abandoned house across the street from her home. As the victim screamed and struggled to get away, Mangham hit her and said "shut up, bitch" and "it's gonna happen anyway." After Mangham dragged the victim to the bottom step of the abandoned house, a truck drove down the street while a neighbor screamed "leave that girl alone." After the truck pulled up, Mangham walked away. Law enforcement officers arrived shortly thereafter.

A witness, Kendrick Dallas, testified that as he was walking home that evening, he saw Mangham standing with Wilson at the abandoned house. As Dallas continued down the street, he watched Mangham walk toward the victim's home with a stick. When Wilson saw Dallas, he told Mangham "to come back." Since Dallas "had a feeling they was fixing to do something," he cut through a side yard and hid behind a tree. When he did not see anything as he looked up the street toward the victim's home, he turned around and started walking toward his home again. When he heard a scream, he ran back to the tree and saw the victim on the side of the road with someone standing over her and beating her. Dallas then ran and called the police.

Officer Puckett testified that he investigated the case and obtained a statement from Mangham. In this statement, Mangham admitted he was with Wilson in the vicinity of the attack that evening. He also acknowledged he had been "drinking beer and smoking crack" that evening. When Officer Puckett asked Mangham, "[i]s it possible that you entered [the victim]'s house through the window by taking the fan out and going inside and running her out," Mangham replied, "I don't see how I could go through a window 'cause I was so high and drunk. I may have, I don't know. I'm not sure. I could have did it, I don't know. I was just so high and drunk."

The trial court allowed the State to present evidence of Mangham's 1988 conviction for aggravated sodomy of a young woman. Captain Jett testified that he questioned Mangham in connection with this charge and Mangham admitted "[a]ll day, I had been drinking beer and doing — smoking cocaine. In the evening, I walked down the park, and I seen this girl coming through there by herself and I just grabbed her. I stuck my penis in her mouth, and that was it." When asked whether the victim resisted, Mangham replied, "She just opened her mouth, and I stuck it in. I was really high and I didn't really know." Officer Loeffer testified that she interrupted Mangham's assault of the victim while responding to a report of screams and an attack in the park.

1. Mangham contends the trial court erred when it allowed the State to present evidence of his prior aggravated sodomy conviction.

"[E]vidence of an independent offense or act committed by the accused is highly and inherently prejudicial, raising, as it does, an inference that an accused who acted in a certain manner on one occasion is likely to have acted in the same or in a similar manner on another occasion. . . ." *Williams v. State*, 261 Ga. 640, 641 (2) (a) (409 SE2d 649) (1991). "It must be established that the State wishes to introduce evidence of the independent offense for an appropriate purpose; that the defendant committed the independent act; and that the independent act and the act for which the accused is being tried have a sufficient connection or similarity that proof of the former tends to prove the latter. The law does not require that in order to be admissible for a legitimate purpose as a similar transaction a crime be identical to the crime charged. . . . There can be a substantial variation of circumstances where there exists a logical connection between crimes which are essentially dissimilar. The issue of admissibility of extrinsic transactions has never been one of mere similarity. It is, rather, relevance to the issues in the trial of the case. Depending upon the purpose for which the extrinsic evidence is offered, e.g., where similar transaction evidence is offered to prove identity, the state may be required to prove a high degree of similarity between relevant characteristics of the extrinsic offenses and the charged crimes, or it may only have the burden of showing a *logical connection* between crimes which are essentially dissimilar. When similar transaction evidence is being introduced to prove motive, intent, or bent of mind, it requires a lesser degree of similarity to meet the test of admissibility than when such evidence is being introduced to prove identity. . . ." (Citation and punctuation omitted; emphasis in original.) *Jones v. State*, 226 Ga. App. 721, 723-724 (1) (487 SE2d 618) (1997). In this case, the prior offense was admitted to show motive, intent and state of mind.

"[T]he rules regarding the use of similar transaction evidence are construed most liberally in cases involving sexual offenses. [Cit.]" *Lumsden v. State*, 222 Ga. App. 635, 636 (1) (475 SE2d 681) (1996). Moreover, "[a] trial court's determination that similar transaction evidence is admissible will not be disturbed absent an abuse of discretion." *Farmer v. State*, 231 Ga. App. 78, 79 (1) (498 SE2d 559) (1998). In the present case, the similarities between the two offenses include Mangham's (1) public assault of (2) a young woman (3) during the evening (4) after his admitted use of alcohol and drugs. Also, in both instances, Mangham left the scene of the attack after the arrival of a third party. We find the prior independent offense was sufficiently similar to authorize the trial court to allow it into evidence. See *Lumsden*, supra; *McBee v. State*, 228 Ga. App. 16, 18-20 (1) (491 SE2d 97) (1997).

2. Mangham contends there is insufficient evidence of intent to

support his convictions of burglary and aggravated assault with intent to rape. Intent to rape, which is an essential element of both the burglary and aggravated assault charges against Mangham,[1] may be shown by circumstantial evidence. See *Kinney v. State*, 155 Ga. App. 95-96 (1) (270 SE2d 209) (1980); *Butler v. State*, 194 Ga. App. 895, 897 (2) (392 SE2d 324) (1990). "Whether appellant intended to rape the victim was a matter for the jury to determine and, as a general rule, the State must of necessity rely upon circumstantial evidence. [Cit.]" Id.

In *Kinney*, supra, this Court found sufficient evidence to affirm a burglary with intent to rape conviction. 155 Ga. App. at 96. The evidence at issue in *Kinney* showed the defendant entered the home of the victim without permission. The victim "was in the bathroom partially dressed when she heard a step in the hallway and saw defendant standing there. Hiding herself behind the bathroom door, she asked defendant what he was doing there. Defendant said he wanted to see her father. She told him her father did not live there any more and described where he could be found. When defendant walked toward her, she tried to shut the bathroom door but defendant blocked it. She opened the door and tried to run but defendant grabbed her arms, pulled her against his body, and told her he wanted to get to her. She struggled free of defendant, told him to get out, and ran into her bedroom to get her pants. She then held an outside door open and told him again to go. He caressed her arm and again said he wanted to get to her. When she told him again to leave he threw up his hands, said, 'Okay, Okay, all right, all right, I'm gone,' ran out the door, got into his car and drove away." Id. at 95. The defendant "testified that he was a 62-year-old alcoholic, was intoxicated at the time of the alleged offense, had no memory of what occurred, and could not deny the truth of the victim's testimony." Id. "Another young woman testified that several years previously she had been a victim of similar conduct of defendant under similar circumstances." Id.

Since the evidence in this case is very similar to the evidence at issue in *Kinney*, we find it sufficient to authorize a rational trier of fact to find Mangham guilty beyond a reasonable doubt. *Kinney*, supra. See also *Butler*, supra; *Lester v. State*, 173 Ga. App. 300 (325 SE2d 912) (1985).

*Judgment affirmed. Pope, P. J., and Beasley, J., concur.*

---

[1] Intent to commit a felony is an essential element of burglary. OCGA § 16-7-1 (a). The indictment alleged Mangham committed burglary "with the intent to commit a felony, to wit: Rape. . . ." It also alleged he committed aggravated assault with intent to rape. See OCGA § 16-5-21 (a) (1).

DECIDED SEPTEMBER 29, 1998.

*Johnny B. Mostiler*, for appellant.

*William T. McBroom III, District Attorney, Daniel A. Hiatt, Assistant District Attorney*, for appellee.