309 Ga. 493
FINAL COPY

S20A0725. HOOD v. THE STATE.

McMILLIAN, Justice.

A jury found Appellant Diara Hood guilty of the felony murder

of Steven Carden, the aggravated assault of Thomas Smith, and

other related crimes.[1] Following the trial court's denial of her motion

---

[1] The crimes occurred on July 29, 2013. On February 5, 2014, a Gwinnett County grand jury indicted Hood, Jovian Lanus, and Tyler Estrada for malice murder of Carden (Count 1), felony murder of Carden predicated on armed robbery (Count 2), armed robbery of Carden (Count 3), felony murder of Carden predicated on aggravated assault (Count 4), aggravated assault of Carden (Count 5), aggravated battery of Carden (Count 6), armed robbery of Smith (Count 7), and aggravated assault of Smith (Count 8). Lanus pleaded guilty to felony murder and was sentenced to serve life in prison. The disposition of the charges against Estrada is not apparent from the record before us. Neither Lanus's nor Estrada's case is part of this appeal.

Hood was tried alone from November 17 to 20, 2015. The jury found Hood not guilty of malice murder and aggravated battery and guilty of all other counts. The trial court sentenced Hood to serve life in prison without the possibility of parole for each felony murder count, twenty years concurrent for each of the two counts of aggravated assault, and twenty years concurrent for each of the two counts of armed robbery.

Hood filed a motion for new trial on December 1, 2015, which she amended through new counsel on July 16, 2018. Following a hearing, the trial court denied Hood's motion (as amended) on February 28, 2019, but noted that it erred in sentencing Hood. The trial court entered an amended sentencing order, sentencing Hood to serve life in prison without the possibility of parole

for new trial, Hood appeals, arguing that the trial court erred by admitting other-acts evidence and by charging the jury on that evidence. Although we conclude that the trial court committed two merger errors at sentencing, we otherwise affirm her convictions.

1. Viewed in the light most favorable to the jury's verdict, the evidence presented at trial showed that Hood used herself as bait to lure Carden and Smith to a location in Gwinnett County on the pretext that she would sell Carden drugs or engage in a sexual encounter with him. Instead, Hood set up Carden and Smith to be ambushed and robbed by Tyler Estrada and Jovian Lanus, her co-indictees.

At 7:00 a.m. on July 29, 2013, Gwinnett County Police responded to a call reporting a suspicious person in the parking lot

for felony murder predicated on armed robbery, twenty years concurrent for each of the two counts of aggravated assault, and twenty years concurrent for one count of armed robbery. The remaining counts were either vacated by operation of law or merged for sentencing purposes. We have identified two additional sentencing errors that we correct in Division 4. Hood filed a timely notice of appeal, and this case was docketed to the April 2020 term of this Court and thereafter submitted for a decision on the briefs.

of an apartment complex. When the responding officer arrived on scene, he located Carden, who was dead as a result of a gunshot wound below his right eye and had also sustained a broken nose, and Smith, who was disoriented and had blood on his face and an injury to his left ear.[2]

At trial, Smith testified that in the early morning hours of July 29, he and Carden, who were both under the influence of a variety of drugs, briefly visited a strip club and then drove to a nearby bar. While Smith waited in his car, Carden went inside the bar to see if any seating was available. About 20 minutes later, Carden returned to the car with a bag of cocaine that he had purchased from Hood. Carden asked Smith to drive him to meet Hood; according to Smith, "[T]hey had made a deal, and [Carden] asked me would I take him to meet her to — for . . . services." Following directions from Hood, whom Carden both texted and called, Smith drove north to Gwinnett County and briefly pulled into the parking lot of a closed convenience

---

[2] Smith's injury required approximately ten stitches.

store on South Norcross-Tucker Road.[3] As he was driving out of the parking lot, Smith was stopped by a Gwinnett County Police Department officer for driving without headlights. The officer administered a sobriety test, which Smith passed. A second officer, with a background in drug recognition, was called to the scene around 5:00 a.m. to administer another set of tests, which were inconclusive. However, the officers would not allow Smith to drive away because they suspected that Smith was under the influence of drugs; Carden had been drinking and could not drive. The officers had Smith call a family member for a ride and then left after taking Smith's car keys.

Smith testified that he and Carden then looked for somewhere to wait for their ride, which was approximately 45 minutes away, finally settling on standing by a dumpster near the road. However, they decided that remaining in such a visible position was not a good idea, so they elected to walk around a nearby apartment complex.

---

[3] Smith did not know whom Carden was texting or whom they were meeting.

Carden continued texting Hood while they walked, but Smith did not know what the texts concerned. Upon returning to the front of the complex, Carden and Smith encountered two men wearing hoodies and hats. The evidence presented at trial showed that the men were Lanus and Estrada. Lanus and Estrada asked Smith and Carden to follow them down a dark street to see something, but Smith declined and, pulling Carden with him, began to walk back toward the dumpster. Carden was still communicating with Hood on his phone. The next thing Smith could recall was waking up in the apartment complex's parking lot as paramedics loaded him into an ambulance. Both Smith's and Carden's cell phones, as well as Carden's wallet, were missing.

Records from Carden's phone showed multiple communications on July 29 with a phone number that investigators linked to Hood. At 2:59 a.m., Carden texted "OK almost there," and at 3:08 a.m., he texted, "At shell one on the ritd [sic]." And in the three hours before his death, Carden continued to make and receive 27 calls and numerous text messages to and from the same number.

Carden's final call with Hood ended at 6:09 a.m., which investigators pinpointed as the time of his death. Phone logs for the number linked to Hood showed both that Hood was in regular contact with Lanus during the same time in which she was in contact with Carden and that she called Lanus immediately after her final call with Carden ended.

A shell casing recovered from the crime scene also linked Hood and her co-indictees to the shooting. An investigating detective testified that a Glock handgun with an extended magazine and missing sights was recovered from a juvenile suspect in an unrelated armed robbery attempt that occurred about two weeks after the shooting. The juvenile identified Lanus's address as the location where he had acquired the handgun, and ballistics testing showed that the shell casing recovered from the parking lot where Carden was shot was ejected from the Glock.[4] Pictures posted to Hood's

---

[4] The shell casing located at the crime scene was a Hornady .40-caliber casing, which, according to the investigating detective, "is somewhat rare to see" as "[i]t's a fairly high-end brand." When the Glock was recovered from the juvenile, police also recovered several .40-caliber Hornady shell casings that "appeared to match" the casing recovered from the crime scene.

Facebook profile two weeks before the crimes showed her holding a Glock handgun outfitted with an extended magazine and missing its sights, similar to the handgun recovered from the juvenile.

The State also offered into evidence a video recording of Hood's custodial interview with Gwinnett County Police. During the interview, Hood initially denied any involvement in or knowledge of the shooting. After being confronted with the evidence against her, Hood changed her story and claimed that Lanus wanted to rob the men and tried to get Hood to set them up, but Hood refused. She said that Lanus, Estrada (whom she identified as her boyfriend), and some other people went to buy marijuana while she went to meet Carden at a shopping center, but Lanus and the others coincidentally ended up in the same apartment complex where Carden and Smith were walking, at which point Lanus shot Carden. Hood eventually altered her story a third time and confessed that Lanus, Estrada, and some other people overheard Carden at the bar bragging about being wealthy and having a large amount of cash with him. Hood arranged to meet up with Carden later, and when

she, Estrada, Lanus, and the others returned to Gwinnett County, they made plans to rob Carden and Smith. Hood claimed that she understood the plan to be that she would meet up with Carden and Smith alone and take their wallets when they were not paying attention. Hood did not explain how Lanus and Estrada located Carden and Smith in the apartment complex and maintained that she was at the shopping center when she heard a gunshot, but she confessed to returning to the crime scene after the shooting and to taking both Carden's and Smith's cell phones as well as Carden's wallet.

Hood told yet another story at trial, claiming that she had no part in formulating or executing the plan to rob Carden and Smith. She pinned the blame on Lanus, who was the shooter, characterizing him as a dangerous person who made the "independent decision" to rob Carden and Smith and to shoot Carden. In support of this defense, Hood offered a somewhat altered account of the events leading up to the shooting than the versions she told during her custodial interview. She testified that after the traffic stop, Carden

called her again for directions and mentioned that he had another $4,000 with him; according to Hood, Carden asked her to "get a girl for him . . . he wanted to basically have group sex with a girl for him and [Smith] and another guy[.]" Hood, who was at a friend's apartment with several other people, spoke with Carden over speakerphone and was overheard by Estrada and Lanus. Hood claimed that she told Carden to meet her at a shopping center not far from where Smith's car was parked.[5]

Hood testified that when she got off the phone, Lanus proposed that he, Hood, and Estrada rob the men of the money. Hood dismissed the plot as a "bad idea" and sent Lanus and Estrada to pick up marijuana for her at another apartment complex in order to get them to go "a separate way" from where she was meeting Carden. She then drove to the shopping center and parked, remaining inside the car to wait for Carden. While waiting, Hood

---

[5] Smith, on the other hand, testified that, after the traffic stop, he took charge of the situation and told Carden that they were going to wait for their ride and go home. His testimony did not mention Carden's calling Hood to set a different meeting spot or Carden's trying to arrange group sex for them.

was on the phone with Carden, who told her that he and Smith had walked to a nearby apartment complex and then began describing the apartment complex to Hood. Hood heard a gunshot, and the line went dead. When Hood went back to the apartment where Estrada and Lanus were waiting, they told her what they had done, and she returned to the crime scene to take Smith's and Carden's cell phones to "slow down the process of [police] finding [her] number and connecting" her to the crimes. She denied taking Carden's wallet. Hood testified that she later sold the Glock handgun used in the shooting and retained the proceeds from the sale, despite claiming that the weapon belonged to Lanus.

Although not enumerated as error by Hood, consistent with this Court's customary practice in murder cases, we have reviewed the record and conclude that, when viewed in the light most favorable to the verdicts, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Hood guilty beyond a reasonable doubt of the crimes of which she

was convicted.[6] See *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). See also OCGA § 16-2-20 (defining parties to a crime); *Powell v. State*, 307 Ga. 96, 99 (1) (834 SE2d 822) (2019) ("[C]onviction as a party to a crime requires proof that the defendant shared a common criminal intent with the principal perpetrator of the crime[,] . . . [which] may be inferred from presence, companionship, and conduct before, during[,] and after the offense." (citation and punctuation omitted)); *Vega v. State*, 285 Ga. 32, 33 (1) (673 SE2d 223) (2009) ("It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence." (citation and punctuation omitted)).

2. Hood argues that the trial court abused its discretion by admitting other-acts evidence against her. We disagree.

Before trial, the State filed a notice of intent to introduce

---

[6] We remind litigants that the Court will end its practice of considering sufficiency sua sponte in non-death penalty cases with cases docketed to the term of court that begins in December 2020. See *Davenport v. State*, ___ Ga. ___ (4) (___ SE2d ___) (2020). The Court began assigning cases to the December term on August 3, 2020.

evidence under OCGA § 24-4-404 (b) ("Rule 404 (b)") showing Hood's involvement in a November 2013 robbery and assault in DeKalb County. In its notice, the State asserted that the evidence was admissible to prove intent, motive, lack of mistake or accident, and plan with respect to the charged crimes; following a hearing, the trial court deemed the evidence admissible to prove intent, motive, lack of mistake or accident, and knowledge.[7]

The other-acts evidence was presented during the State's case-in-chief through the testimony of an eyewitness and the investigating detective and showed that, on November 3, 2013, DeKalb County Police responded to reports of a man being beaten in a parking lot by two hooded individuals who ran off when eyewitnesses intervened. Surveillance video from a nearby bank showed a black BMW pulling into the parking lot and two hooded individuals who matched descriptions provided by eyewitnesses exiting the BMW. Investigators learned that the victim was meeting

---

[7] The trial court did not explain why the evidence was admitted for any of those purposes, including knowledge, which was not a purpose argued by the State.

a tenant, Shakima Simon, in the parking lot to collect rent after having a difficult time getting Simon to pay her rent. The assault happened immediately after Simon gave the victim the rent payment and drove off, and the payment was taken by the two hooded individuals.

Investigators obtained a search warrant for Simon's home and learned that Hood and Estrada lived there and that Simon owned a black BMW, similar to the one shown on the surveillance video. After being confronted with the surveillance video showing what appeared to be her car at the crime scene, Simon identified the hooded individuals as Hood and Estrada. Officers thereafter arrested Hood and Estrada, and in a video-recorded statement that was played for the jury at trial, Hood admitted that she was involved in the incident and indicated that she took the victim's wallet and threw its contents in a sewer near her home. Police later located the victim's identification and credit cards in the sewer. The medical examiner testified that the victim died approximately nine months after the assault as a result of complications brought on by a stroke,

which was caused by the stress of the assault. At the time of trial, Hood had not been charged in connection with the DeKalb County incident.

We review the trial court's decision to admit evidence pursuant to Rule 404 (b) for a clear abuse of discretion. See *Jackson v. State*, 306 Ga. 69, 76 (2) (b) (829 SE2d 142) (2019). It is well established that other-acts evidence is not admissible "to prove the character of a person in order to show action in conformity therewith." OCGA § 24-4-404 (b). Nevertheless, such evidence is admissible for other purposes, including "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Id. A party offering evidence pursuant to Rule 404 (b) must demonstrate three things: (1) that the evidence is relevant to an issue in the case other than the defendant's character; (2) that the evidence's probative value is not substantially outweighed by its undue prejudice; and (3) that sufficient proof exists for a jury to find by a preponderance of the evidence that the defendant committed the other act. See *Kirby v. State*, 304 Ga. 472, 479 (4) (819 SE2d 468)

(2018). See also *Taylor v. State*, 306 Ga. 277, 282 (2) (830 SE2d 90) (2019) ("The three-pronged test applies whether the extrinsic acts occurred before or after the charged crimes occurred." (citing *United States v. Jernigan*, 341 F3d 1273, 1283 (II) (B) (11th Cir. 2003)). Hood does not argue that the State failed to meet its burden on the third part of this test; thus, we address only the first and second parts.

We turn first to the relevancy of the other-acts evidence. Evidence is relevant if it "ha[s] any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OCGA § 24-4-401. As an initial matter, we disagree with Hood's contention that the evidence lacked any relevant noncharacter purpose and was instead offered for the sole purpose of showing that she has a propensity to commit criminal acts. Because Hood entered a plea of not guilty, she made "intent a material issue, and the State may prove intent by qualifying Rule 404 (b) evidence absent affirmative steps by the defendant to remove

intent as an issue." *Naples v. State*, 308 Ga. 43, 51 (2) (e) (838 SE2d 780) (2020) (citation and punctuation omitted).

We are likewise unpersuaded by Hood's argument that she removed intent as an issue by admitting during her custodial interview that she intended to rob Carden and Smith of their wallets if the opportunity arose. Hood was charged as a party to the crimes, and the State conceded that she was not the shooter. As such, the State was required to prove that Hood "shared a common criminal intent with the direct perpetrators." *Fleming v. State*, 306 Ga. 240, 247 (3) (b) (830 SE2d 129) (2019). And at trial, Hood testified to a different story, one where she did not share a common intent with Lanus and Estrada. Thus, the State still very much needed to prove Hood's intent to commit armed robbery. What is more, armed robbery was not the only crime for which Hood was prosecuted in this case and for which the State was required to prove intent. Hood was charged with other crimes, including malice murder, aggravated assault, and aggravated battery, and "we may consider whether the other act[ ] [was] relevant to the issue of intent on any

of these offenses." *Booth v. State*, 301 Ga. 678, 683 (3) (804 SE2d 104) (2017).

"[T]he relevance of other acts evidence offered to show intent is established when the prior act was committed with the same state of mind as the charged crime." *Naples*, 308 Ga. at 51 (2) (e). Here, the states of mind required for the charged offenses of aggravated assault, aggravated battery, and armed robbery were the same as the states of mind required for the uncharged DeKalb County incident, which could constitute robbery, aggravated assault, and aggravated battery. Therefore, the trial court did not err by ruling that the other-acts evidence was relevant to a matter other than Hood's character — her intent.[8]

Having concluded that the other-acts evidence met the first part of the Rule 404 (b) test, we turn to the test's second part, which

---

[8] Under these circumstances, because we conclude that the evidence was relevant to prove intent and because Hood does not challenge the trial court's jury instructions as to the admission of the evidence (except as to proving motive, which we address in Division 3), we need not decide whether it was admissible for the other purposes determined by the trial court. See *Naples*, 308 Ga. at 52 (2) (e) n.9.

is controlled by OCGA § 24-4-403 ("Rule 403"). Rule 403 provides for the exclusion of relevant evidence where "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." In other words, other-acts evidence should be excluded if it constitutes "matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *McKinney v. State*, 307 Ga. 129, 137 (3) (b) (834 SE2d 741) (2019) (citation and punctuation omitted). "Factors to be considered in determining the probative value of other act evidence offered to prove intent include its overall similarity to the charged crime, its temporal remoteness, and the prosecutorial need for it." *Jackson*, 306 Ga. at 77 (2) (b) (ii).

Here, the prosecutorial need for the other-acts evidence was significant. Hood's chief defense at trial was that Lanus and Estrada acted on their own in carrying out the crimes and that she was not aware that they were going to rob the victims and had no intent to

participate in the crimes with them. As we have explained, "if the principal in the killing was not the defendant," as is the case here, "a question then would have arisen about whether the defendant was a party to the crime as an accomplice, which would have depended substantially upon [her] intent." *Olds v. State*, 299 Ga. 65, 76 (2) n.17 (786 SE2d 633) (2016). See also *Heard v. State*, ___ Ga. ___ (3) (g) (___ SE2d ___) (2020) (explaining that intent is a "crucial issue[ ]" where a defendant is, at most, a party to the crimes charged); *Kirby*, 304 Ga. at 483 (4) (a) (i) ("high prosecutorial need" for other-acts evidence "greatly increases its probative value"). Moreover, the charged crimes and the DeKalb County incident bear striking similarities: both incidents involved victims in possession of cash who were lured to a specific location for an agreed-upon transaction with Hood or her associate, at which point they were ambushed by two hooded individuals, beaten, and robbed by force. Estrada was also involved in both incidents. As for temporal proximity, the DeKalb County incident occurred less than four months after the charged crimes in a neighboring county. The DeKalb County

incident thus had high probative value. Even if the evidence was prejudicial, "we cannot say that the high probative value of this evidence was so outweighed by the danger of unfair prejudice that the trial court abused its discretion when it admitted it." *Naples*, 308 Ga. at 53 (2) (e) (punctuation omitted). For these reasons, we conclude that this claim is without merit.

3. Hood also asserts that the trial court erred when charging the jury on other-acts evidence by instructing that the State was required to prove motive. Specifically, before any witness testified about the November 2013 robbery and again as part of its final charge to the jury, the trial court instructed the jury as follows:

> In order to prove its case in Counts 1 through 8, the State *must show* knowledge, *proof of motive*, intent, and lack of mistake or accident. To do so, the State has offered evidence of other crimes allegedly committed by the accused. You are permitted to consider that evidence only insofar as it may relate to those issues and not for any other purpose. You may not infer from such evidence that the defendant is of a character that would commit such crimes.

(Emphasis supplied.) Because Hood did not object to this instruction at trial, however, we can review her claim only for plain error. Hood

therefore "must establish not only that the jury instruction was erroneous, but also that it was obviously so and that it likely affected the outcome of the proceedings." *Parker v. State*, 305 Ga. 136, 139 (3) (823 SE2d 313) (2019) (citation and punctuation omitted).

It is true, as Hood argues, that the State was not required to prove motive. See *Calhoun v. State*, 308 Ga. 146, 153 (2) (c) (iii) (839 SE2d 612) (2020) ("[M]otive is not an essential element of any offense[.]"). Thus, by instructing the jury otherwise, the trial court committed a clear and obvious error, which Hood did not affirmatively waive. "But even a *clear* error is *plain* error only if it likely affected the outcome of the proceedings." *Jackson*, 306 Ga. at 83 (4) (a) (emphasis in original). And here, Hood has failed to demonstrate that the erroneous instruction, which increased the State's burden of proof, in fact affected the proceedings. See *Allen v. State*, 290 Ga. 743, 745-46 (3) (723 SE2d 684) (2012) (where appellant's defense at trial was that he intended to shoot someone besides the victim, failure to charge jury on transferred intent did not affect outcome of proceedings because, "[i]f anything, the charge

given placed a higher burden on the State relative to proof of intent"). This claim therefore fails.

4. Although Hood does not raise the issue on appeal, we have identified two merger errors in her sentencing. See *Dixon v. State*, 302 Ga. 691, 696-97 (4) (808 SE2d 696) (2017) ("We have the discretion to correct merger errors sua sponte . . . because a merger error results in an illegal and void judgment of conviction and sentence."). With respect to Carden, the deceased victim, Hood was charged with and found guilty of felony murder predicated on armed robbery, armed robbery, felony murder predicated on aggravated assault, and aggravated assault. The trial court sentenced her to serve life in prison without the possibility of parole for felony murder predicated on armed robbery; the guilty verdict on the predicate felony of armed robbery was merged for sentencing purposes, and the guilty verdict on the other felony murder count was vacated by operation of law. The trial court also sentenced Hood to serve 20 years concurrent on the predicate felony of aggravated assault; this was error.

"[B]ecause there is no element of aggravated assault with a deadly weapon that is not contained in armed robbery, that form of aggravated assault will merge into armed robbery if the crimes are part of the same act or transaction." *Chambers v. Hall*, 305 Ga. 363, 365 (3) (825 SE2d 162) (2019) (citation and punctuation omitted). The evidence shows that the aggravated assault of Carden by shooting him was part of the same transaction as the armed robbery of Carden,[9] so the aggravated assault count should have merged with the armed robbery conviction. See *Long v. State*, 287 Ga. 886, 888-89 (2) (700 SE2d 399) (2010) (recognizing that aggravated assault with a deadly weapon merges with armed robbery). Therefore, Hood's conviction and 20-year sentence for the aggravated assault of Carden (Count 5) is vacated.

As to the counts concerning Smith, the surviving victim, Hood was charged with and found guilty of both aggravated assault and

---

[9] "[T]he same merger analysis applies in determining whether the . . . aggravated assault merged into either the armed robbery conviction or the felony murder predicated on that armed robbery." *Long v. State*, 287 Ga. 886, 888 (2) n.2 (700 SE2d 399) (2010).

armed robbery. The trial court sentenced Hood to serve 20 years concurrent on each count. However, as with the counts involving Carden, the evidence shows that the aggravated assault of Smith was part of the same transaction as the armed robbery of Smith because both counts stemmed from the same underlying conduct: striking Smith in the head with a firearm, thereby rendering him unconscious and permitting Hood to take his cell phone. Accordingly, the count for the aggravated assault of Smith (Count 8) should have merged with Hood's conviction for the armed robbery of Smith (Count 7). We thus vacate Hood's conviction and 20-year sentence for the aggravated assault of Smith.

*Judgment affirmed in part and vacated in part. All the Justices concur.*

DECIDED AUGUST 10, 2020.
Murder. Gwinnett Superior Court. Before Judge Schrader.
*Clark & Towne, Jessica R. Towne*, for appellant.
*Daniel J. Porter, District Attorney, Lee F. Tittsworth, Daniel Sanmiguel, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Alex M. Bernick, Assistant Attorney General*, for appellee.