**SECOND DIVISION**
**MILLER, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 15, 2022**

# In the Court of Appeals of Georgia

A21A1221, A21A1532. GIBSON v. THE STATE.

PIPKIN, Judge.

In Case No. A21A1221, Christopher Gibson appeals his convictions for armed robbery and other related crimes, and in Case No. A21A1532, Gibson appeals his unrelated conviction for theft by shoplifting. As explained below, in Case No. A21A1221, we agree with Gibson that the trial court committed merger errors during sentencing, but we otherwise affirm his convictions; in Case No. A21A1532, we reverse.

*Case No. A21A1221*

Following a jury trial, Gibson was found guilty of armed robbery, kidnapping, criminal attempt to commit rape, aggravated assault with a deadly weapon, aggravated assault with intent to rape, possession of a firearm during the commission

of a felony, and possession of a firearm by a convicted felon all in connection with the robbery and assault of a manager of a Subway restaurant. On appeal, he contends that the trial court erred by denying his motion for a mistrial and raises two claims of merger error.

1. Gibson first argues that the trial court erred by denying his motion for mistrial after the State, during closing argument, mistakenly played for the jury a recording of an unredacted telephone call that Gibson placed to his wife while he was in jail. Gibson asserts that this recording improperly placed his character into evidence. This enumeration presents no basis for reversal.

Whether to grant or deny a motion for mistrial is within the trial court's sound discretion, and this Court will not disturb such ruling "unless it resulted from a manifest abuse of that discretion." (Citation and punctuation omitted.) *Taylor v. State*, 303 Ga. 225, 229 (3) (811 SE2d 286) (2018). "When determining whether the trial court abused its discretion, we consider the statement itself, other evidence against the accused, and the actions of the trial court and counsel dealing with the impropriety," (Citation and punctuation omitted.) id., as well as "whether the reference to the improper character evidence is isolated and brief, whether the jury's exposure was repeated or extensive, and whether the introduction of the objectionable

2

evidence was inadvertent or whether it was deliberately elicited by the State," (Citation and punctuation omitted.) *Smallwood v. State*, 334 Ga. App. 224, 225-226 (1) (779 SE2d 1) (2015).

Before jury selection began, the State informed the trial court that, the previous day, an investigator had provided a recording of a telephone call between Gibson and his wife, which Gibson had made from jail; the State provided a copy of the recording to Gibson's counsel within minutes of receiving it from the investigator. The State sought to introduce the telephone call into evidence at trial because Gibson admitted to his wife during the call that he was at the Subway restaurant on the morning of the robbery. The State hoped to pair this statement with surveillance video that showed a car resembling one owned by Gibson was in the area at the time of the robbery. Gibson objected on grounds of late notice and relevance, but the trial court overruled his objection. The State prepared a redacted version of the recording to introduce into evidence which removed Gibson's reference to charges brought against him in an unrelated case. Although Gibson's counsel approved the redactions, he maintained his objection to the telephone call's relevance. The State played the redacted recording during its case-in-chief.

During the State's closing argument, the prosecutor again played the recording of the telephone call for the jury; however, the prosecutor inadvertently played the unredacted version. As a result, Gibson could be heard telling his wife that people were saying he "took the lady['s] Michael Kors purse and stuff like that. Went in her car, took her purse." Gibson moved for a mistrial, arguing that the State had improperly admitted new evidence bearing on his character, namely the reference to the Michael Kors purse that had not previously been addressed during the trial and, unbeknownst to the jury, was related to other crimes not connected to this case. The trial court denied the motion but offered to give a curative instruction; Gibson agreed to the curative instruction while also preserving his motion for mistrial. The trial court crafted the following curative instruction, which was approved by the State and Gibson and subsequently read to the jury before the State resumed its closing argument:

> I will caution you again that what the attorneys say is not evidence. The evidence in this case is the testimony of all of the witnesses and the exhibits which were admitted during the evidentiary portion of the trial.

On appeal, Gibson maintains that the trial court's denial of his motion for mistrial constitutes an abuse of discretion. While we agree that the prosecutor

4

accidentally, but nevertheless improperly, interjected matters not in evidence by playing the unredacted recording, we conclude that the trial court did not abuse its discretion in denying Gibson's motion for mistrial. As an initial matter, Gibson does not argue on appeal, nor did he argue in the trial court, that the State purposely played the unredacted recording. The jury's exposure to the statement was brief; indeed, the statement at issue comprised fewer than three seconds of the nearly six-minute phone call and, moreover, was difficult to understand given the garbled nature of the recording. See *Elkins v. State*, 306 Ga. 351, 360 (3) (830 SE2d 217) (2019) ("A passing reference to a defendant's record does not place his character in evidence.") (citation and punctuation omitted).

Critically, in addition to giving the curative instruction quoted above, the trial court instructed the jury on three separate occasions that opening and closing arguments are not evidence and that it could consider only witness testimony and physical evidence presented during the evidentiary portion of the trial in reaching its verdict. See *Gardner v. State*, 273 Ga. 809, 813 (5) (546 SE2d 490) (2001) ("[C]urative instructions are a proper remedy" when a defendant's character is improperly placed into evidence.); see also *Lowe v. State*, 287 Ga. 314, 316 (2) (a) (695 SE2d 623) (2010) ("[T]he Court must presume that the jury followed the trial

court's instruction[.]") (citation and punctuation omitted). Further, the trial court informed the jury at the conclusion of the defense's case that the evidentiary portion of the trial had concluded and also instructed that criminal charges "are not evidence" and should not be considered "as evidence or implication of guilt of any crime whatsoever."

In sum, the record does not establish that the trial court abused its discretion by denying Gibson's motion for mistrial, and this claim fails.[1] See *Gardner*, 273 Ga. at 813 (5) (no abuse of discretion in denying motion for mistrial where jury was permitted to hear recording of defendant's interrogation that was supposed to have been redacted to omit reference to defendant's prior crime because the trial court immediately gave a curative instruction); *Smallwood*, 334 Ga. App. at 225 (1) (no abuse of discretion in denying motion for mistrial based on State's inadvertent failure

---

[1] Gibson also argues that the curative instruction was insufficient "to 'free the jury's mind of prejudice' because the incriminating statement did not come from the attorneys, it came from [Gibson]" and thus, he says, a mistrial was the only appropriate remedy. The record reflects, however, that Gibson's counsel not only suggested key parts of the instruction but also approved the instruction's precise language before it was given. Such acquiescence deprives Gibson of the right to complain further about the content of the curative instruction. See *Cummings v. State*, 266 Ga. App. 799, 806 (4) (598 SE2d 116) (2004).

6

to mute portion of recording that referred to defendant's being on parole where jury's exposure to challenged statement was brief).

2. Gibson next asserts that the trial court committed two merger errors in sentencing.[2] We address each claim in turn.

(a) Gibson argues that the aggravated assault with a deadly weapon count should have merged into the armed robbery conviction. We agree.

"Whether offenses merge is a legal question, which we review de novo." (Citation and punctuation omitted.) *Regent v. State*, 299 Ga. 172, 174 (787 SE2d 217) (2016). As our Supreme Court has explained in addressing the same merger issue presented in this case, "[b]ecause there is no element of aggravated assault with a deadly weapon that is not contained in armed robbery, that form of aggravated assault will merge into armed robbery if the crimes are part of the same act or transaction." (Citation and punctuation omitted.) *Hood v. State*, 309 Ga. 493, 499 (4) (847 SE2d 172) (2020). Here, the evidence shows that the aggravated assault and the armed

---

[2] The trial court sentenced Gibson to serve life in prison for armed robbery. The trial court also sentenced Gibson to serve two years for kidnapping, thirty years for criminal attempt to commit rape, twenty years for aggravated assault with a deadly weapon, twenty years for aggravated assault with intent to rape, and five years for each possession count, all to be served consecutively for an aggregate sentence of life plus eighty-two years.

robbery were part of the same transaction because both counts arose from the same conduct. Specifically, the victim testified that, as she was handing cash from the opened cash register to Gibson, he demanded that she "hurry up, hurry up. And then he hit [her] all on [the] backside. . . . He hit [her] . . . on [the] head . . . with [the] gun." Thus, the count of aggravated assault with a deadly weapon should have merged with the conviction for armed robbery. See id. Consequently, Gibson's conviction and sentence for aggravated assault with a deadly weapon is vacated.

(b) Gibson also contends that the aggravated assault with intent to rape count should have merged into the conviction for criminal attempt to commit rape. Again, we agree.

To avoid merger, "a deliberate interval must exist between the completion of one criminal act and the start of a separate criminal act." *Regent*, 299 Ga. at 174. Here, the indictment charged Gibson with aggravated assault with intent to rape based on his act of "grabbing, striking, and binding" the victim "with intent to rape," and it charged attempt to commit rape based on Gibson's act of "forcefully pull[ing] down the pants and underwear of [the victim] . . . against her will" which "constituted a substantial step toward the commission of [rape.]" The evidence presented at trial showed that, after emptying the cash register, Gibson grabbed the victim by the wrist

8

and briefly pulled her, then he walked behind her and pushed her to the back of the Subway restaurant. There, he directed the victim, "Give me your hands," and then he bound her wrists with duct tape. Gibson also wrapped duct tape around the victim's eyes and mouth and told her to sit; after the victim complied, Gibson pulled down her pants and underwear, and, when she kicked at him, he taped her legs together. This evidence establishes that Gibson's actions "were part of a continuous criminal act, committed at the same time and place and inspired by the same criminal intent. Accordingly, though [Gibson] was charged as if he had committed two distinct criminal acts, the charges here arose out of the same criminal transaction." (Citations and punctuation omitted.) Id.

Where the same conduct establishes "the commission of more than one crime, the accused may be prosecuted for each crime," unless "[o]ne crime is included in the other." OCGA § 16-1-7 (a) (1). We thus turn to the "required evidence" test expounded in *Drinkard v. Walker*, 281 Ga. 211, 217 (636 SE2d 530) (2006), "to determine whether [Gibson's] multiple convictions are precluded because one of the crimes was established by proof of the same or less than all the facts that were required to establish the other crime." (Citation and punctuation omitted.) *Regent*, 299 Ga. at 175. In applying this test, "the important question is not the number of acts

9

involved, or whether the crimes have overlapping elements, but whether, looking at the evidence required to prove each crime, one of the charges was established by proof of the same or less than all the facts required to establish the commission of the other crime charged." *Drinkard*, 281 Ga. at 212.

Criminal attempt to commit rape requires (a) an intent to commit rape, that is, to have forcible and non-consensual carnal knowledge of the victim; (b) performance of a substantial step toward committing rape; and (c) failure to complete the crime. See OCGA §§ 16-4-1, 16-6-1. Aggravated assault with intent to rape requires (a) an assault against the victim; and (b) aggravation of that assault by an intention to rape. See OCGA § 16-5-21 (a) (1). As indicted in this case, the State could secure a conviction for aggravated assault with intent to rape by proving that Gibson committed an assault in either manner contained in OCGA § 16-5-20 (a), and the jury was charged on both methods. First, the assault could be established by proof that Gibson attempted to injure the victim with the intent to rape her, see OCGA § 16-5-20 (a) (1); to prove this type of assault, the State would also be required to show that Gibson acted with specific intent to violently injure the victim, see *Guyse v. State*, 286 Ga. 574, 577 (2) (690 SE2d 406) (2010). Second, the assault could be established

10

by proof that Gibson placed the victim in reasonable apprehension of violent injury with the intent to rape her. See OCGA § 16-5-20 (a) (2).

The evidence produced at trial showed that Gibson took a substantial step toward committing rape – that is, attempted rape – by forcing the victim to the back of the store, binding her hands, and removing her pants and underwear. This same evidence supported Gibson's conviction for aggravated assault with intent to rape based on either type of assault contained in OCGA § 16-5-20 (a).[3] See *Butler v. State*, 194 Ga. App. 895, 897 (2) (392 SE2d 324) (1990) ("The crime of aggravated assault with intent to rape is complete when there is a substantial step toward a battery of the victim, i.e., an assault, coupled with intent to rape.") (punctuation omitted). Therefore, "[b]ecause Gibson's conviction for aggravated assault with intent to rape was established by proof of the same or less than all the facts required to establish his conviction for attempted rape, the former merged into the latter under the required

---

[3] The State, which did not file a responsive brief in Case No. A21A1221, has not argued that we should consider any other injury as proof of the requisite elements of aggravated assault with intent to rape. Cf. *Andrews v. State*, 328 Ga. App. 344, 348 (2) (b) (764 SE2d 553) (2014) (no merger of convictions for aggravated assault with intent to rape and rape because the aggravated assault was complete before the rape and involved "a separate and distinct act of force outside of the force necessary to accomplish the rape"). We remind the State of its duty to file responsive briefs in criminal matters. See Court of Appeals Rule 23 (b).

11

evidence test." *Smith v. State*, 313 Ga. App. 170, 175 (2) (721 SE2d 165) (2011). We thus vacate Gibson's conviction and sentence for aggravated assault with intent to rape.

*Case No. A21A1532*

3. Following a jury trial, Gibson was convicted of theft by shoplifting two bottles of carpet-cleaning solution valued at $39.91 from a Walmart store. On appeal, Gibson argues only that the trial court erred by admitting other acts evidence of a prior conviction for theft by shoplifting. We agree, and because the error was not harmless, we reverse Gibson's conviction.

Five days before trial, the State filed notice of intent to introduce evidence of Gibson's prior shoplifting conviction pursuant to OCGA § 24-4-404 (b); the notice did not indicate the purpose for which the State sought to introduce the evidence. After the jury was impaneled but before opening arguments, the trial court heard argument on the State's motion. The State submitted a certified copy of the prior conviction and explained that it sought to admit evidence of the conviction for the purpose of establishing Gibson's identity because the evidence was "necessary" to show "how [the loss-prevention officer who observed the crime] determined – part of her determination [of] the identity of [Gibson]." According to the State, the prior

conviction involved the same "central facts" as the charged crime. Over Gibson's objection, the trial court granted the State's motion and permitted it to introduce evidence of Gibson's prior conviction to establish his identity.[4]

The sole witness at trial was a loss-prevention officer who testified that, in May 2018, she observed Gibson shoplift from the Walmart store at which she was employed. The officer recognized Gibson as "a frequent shopper" whom she had seen "[n]umerous times," and she testified that the store's loss-prevention officers referred to Gibson as "green eyes." Before turning to the details of the crime, the State elicited the following testimony:

> STATE:     Okay. Now did you know [Gibson] for any other reason?
> WITNESS:  Back in December of 2016, he had been in our store and he
>                    was arrested on that day for shoplifting with another asset
>                    protection associate.
> STATE:     Okay. And when that incident happened, did you have
>                    another opportunity to go back and review the video from
>                    that incident?
> WITNESS:  I did. . . .
> STATE:     So on this particular day, when you saw [Gibson] for the
>                    first time, did you remember his name right off the bat?
> WITNESS:  I did not remember his name.

---

[4] In its written order entered after trial, the trial court also found that the other acts evidence was admissible as intrinsic evidence, despite the fact that the State did not seek to admit the evidence for that purpose; the trial court did not explain the basis for its ruling. The jury was charged to consider the other acts evidence only for the purpose of identity.

13

STATE: And were you able to go back and pull his name?

WITNESS: I had to call the girl that had stopped [Gibson] before. And I was explaining to her, I said, can you please tell me – and I called him "green eyes" because I didn't known who he was at the time – do you remember his name. And she said, I do not, but I can look back in the case file. And I found his name.

The officer went on to testify that she observed Gibson enter the store through the garden center and that she followed him for the duration of his time in the store. As Gibson shopped, the officer observed him place two bottles of carpet-cleaning solution in his cart and later remove the bottles from his cart and place them on an aisle in the housewares department. When his shopping was complete, Gibson pushed a cart containing multiple items of merchandise, including a large carpet-cleaning appliance, to the store's checkout area, where he paid cash for the items totaling $216.66. The officer testified that, after Gibson paid, he walked back through the store toward the garden center and, on the way, stopped at the aisle in the housewares department where he had previously left the bottles of carpet-cleaning solution. The officer testified that she observed Gibson place the bottles back in his cart. Gibson then continued to the garden center and, without paying for the additional items, exited the store, walked to his car, and drove away.

14

In addition to the testimony of the loss-prevention officer, the State entered into evidence surveillance videos, as well as still photographs taken from the videos, which depict Gibson while he was in the store. The videos show Gibson placing two bottles of carpet-cleaning solution in his cart while shopping; the videos do not, however, capture Gibson either removing the items from his cart before proceeding to the check-out area or retrieving them before exiting the store. According to the loss-prevention officer, there is no camera covering the specific aisle where those events occurred.[5] The State also entered into evidence a certified copy of Gibson's 2016 shoplifting conviction, which showed that Gibson pleaded guilty to theft by shoplifting four items with a total value of $96.77 from Walmart.

A trial court's decision to admit evidence pursuant to OCGA § 24-4-404 (b) ("Rule 404 (b)") is reviewed for an abuse of discretion. See *Hood*, 309 Ga. at 499 (2).

---

[5] The State also admitted, among other things, a still photograph taken from the surveillance video showing Gibson exiting the store with his cart. The loss-prevention officer testified to her subjective determination that this photograph showed that the bottles of carpet cleaner were in Gibson's cart as he exited the store, consistent with her observation that she "physically saw him pick them up off of the aisle and place them into his shopping cart." However, whether the still photograph in fact depicts the theft of the items is open to reasonable interpretation. Indeed, in its appellate brief, the State acknowledges "the lack of [surveillance video] footage depicting [Gibson] taking the cleaning supplies or leaving with them, [which] greatly undermined the State's case."

15

While other acts evidence is inadmissible "to prove the character of a person in order to show action in conformity therewith," it may be admissible for other purposes, including identity – the purpose for which evidence of Gibson's prior conviction was ostensibly admitted in this case. See OCGA § 24-4-404 (b).

> A party offering evidence pursuant to Rule 404 (b) must demonstrate three things: (1) that the evidence is relevant to an issue in the case other than the defendant's character; (2) that the evidence's probative value is not substantially outweighed by its undue prejudice; and (3) that sufficient proof exists for a jury to find by a preponderance of the evidence that the defendant committed the other act.

(Citations and punctuation omitted.) *Hood*, 309 Ga. at 499 (2).

Turning to the relevance of the other acts evidence at issue here, when such evidence is offered to prove identity, "the likeness of the offenses is the crucial consideration. The physical similarity must be such that it marks the offenses as the handiwork of the accused." (Citation and punctuation omitted.) *Brooks v. State*, 298 Ga. 722, 725 (2) (783 SE2d 895) (2016). "Much more is demanded than the mere repeated commission of crimes of the same class, such as repeated murders, robberies, or rapes." (Citation and punctuation omitted.) *Sloan v. State*, 351 Ga. App. 199, 206 (2) (a) (830 SE2d 571) (2019).

16

The other acts evidence presented in this case does not pass muster. Indeed, the evidence showed nothing more than that Gibson had previously shoplifted from the same Walmart and fell far short of demonstrating a "signature crime" accomplished through a modus operandi unique to Gibson. See *Brooks*, 298 Ga. at 725 (2) ("Evidence cannot be used to prove identity simply because the defendant has at other times committed the same commonplace variety of criminal act.") (citation and punctuation omitted). In fact, the only similarity shown between the crimes was that both occurred at the same Walmart, but, as evidenced by the loss-prevention officer's testimony, shoplifting from the Walmart store at issue is hardly a signature crime.[6] And this Court has previously held that "similar locations alone is not sufficient evidence of identity in the absence of more unusual similarities to indicate a signature crime." (Citation and punctuation omitted.) *Scott v. State*, 357 Ga. App. 289, 294 (1) (a) (850 SE2d 477) (2020). Therefore, "[b]ecause the State did not establish that the features of the charged crime[] and the [prior conviction], viewed individually or as a whole, marked those crimes as the unique 'signature' of the same perpetrator, the

---

[6] The loss-prevention officer testified that shoplifting occurs at the store "sometimes . . . on a daily basis" and that, in 2018 alone, the store's loss as a result of shoplifting totaled approximately $650,000.

17

trial court abused its discretion by admitting evidence of [the] other act[] to show . . . identity." *Heard v. State*, 309 Ga. 76, 90 (3) (f) (844 SE2d 791) (2020).

Having determined that the other acts evidence was improperly admitted, we must now consider whether reversal of Gibson's conviction is required. A trial court's error in admitting other acts evidence mandates reversal "unless it can be deemed harmless, meaning that it is highly probable that the error did not contribute to the verdict." (Citation and punctuation omitted.) Id. at 90 (3) (g). To determine whether such error was harmless, "we review the record de novo, and we weigh the evidence as we would expect reasonable jurors to have done so as opposed to viewing it all in the light most favorable to the jury's verdict." (Citation and punctuation omitted.) Id. That standard has not been met in this case.

To be sure, the evidence in this case was legally sufficient to permit the jury to find Gibson guilty of the charged crime, but the State's case was not without its weaknesses. The State's theory of the case is that Gibson, after paying for items totaling more than $200, returned to an aisle where he had purportedly stashed two bottles of carpet-cleaning solution valued at less than $40, placed the items in his cart, and exited the store without paying for them. But because the disputed incident occurred on an aisle not visible on security footage, the testimony of the loss-

18

prevention officer was the only evidence establishing that Gibson placed the bottles of carpet-cleaning solution in his cart before leaving the store. Indeed, Gibson's cross examination of the officer, which the State characterizes as "devastating," focused on the absence of security footage and elicited details about the cameras present throughout the store, confirmed that the average shopper would not know where the cameras were located or whether an area of the store fell in a blind spot, and emphasized that the crime occurred in one of the few areas of the store not visible on surveillance cameras.

While the State argues that the admission of the other acts evidence was harmless, the State also appears to concede that evidence of Gibson's prior conviction was the linchpin in its case. Specifically, the State points to "weaknesses" in its case as demonstrative of the prosecutorial need for the other acts evidence, including the facts that "the loss-prevention officer was the sole witness to [the] shoplifting," surveillance video footage showed Gibson pay for items totaling more than $200 but did not show him place the bottles of carpet-cleaning solution in his cart before exiting the store, and "[o]nly the loss-prevention officer's testimony established that [Gibson] took two carpet cleaning products to his vehicle, and then drove off without paying for these items." The State further highlights "the significant evidence that

19

[Gibson] lacked the criminal intent to commit a theft" as proof of its need for the other acts evidence. As the State's argument implies, evidence of Gibson's prior conviction for shoplifting from the same Walmart was intended to have, and likely did have, a significant bolstering effect on the credibility and impact of the loss-prevention officer's testimony.

In short, given the less-than-overwhelming evidence presented at trial coupled with the acknowledged weaknesses of the State's case, "we cannot say . . . that the improper character evidence was so marginal that the jury's verdict was not likely to be impacted." (Citation and punctuation omitted.) *Sloan*, 351 Ga. App. at 211-212 (2) (f). We therefore reverse Gibson's conviction for shoplifting.

*Judgment affirmed in part and vacated in part in Case No. A21A1221. Judgment reversed in Case No. A21A1532. Miller, P. J., and Hodges, J., concur.*