In the Supreme Court of Georgia

Decided:    March 7, 2016

S15A1480.  BROOKS v. THE STATE.

THOMPSON, Chief Justice.

In this murder case, which was tried after January 1, 2013, the effective date of the new Evidence Code, we are called upon to decide whether the admission of other acts evidence to prove identity, motive and course of conduct was error.  We find the trial court erred in admitting the other acts evidence and reverse appellant's conviction.

Appellant Fred Dalton Brooks was convicted of malice murder in connection with the death of James Carter.[1]  Viewing the evidence in the light

[1] The crimes occurred on March 21, 1976.  Appellant was indicted on April 17, 2013, and charged with malice murder, two counts of felony murder, aggravated assault and armed robbery.  Trial commenced on November 4, 2013, and the jury returned its verdict on November 8, 2013, finding appellant guilty on all counts.  The trial court sentenced appellant on November 8, 2013, to life in prison for malice murder.  The trial court merged and vacated the remaining convictions.  See Malcolm v. State, 263 Ga. 369 (434 SE2d 479) (1993); but see Hutchins v. State, 284 Ga. 395, 396 (667 SE2d 589) (2008) (armed robbery is not a lesser included offense of malice murder).  Appellant filed a motion for new trial on December 5, 2013.  The motion was amended on October 14, 2014, amended again on October 21, 2014, and denied on October 31, 2014.  Appellant filed a notice of appeal to the Court of Appeals on December 1, 2014.  The case was docketed in the Court of Appeals on March 17, 2015, transferred to this Court on April 8, 2015, docketed in this Court for the September 2015 term and submitted for decision on the briefs.

most favorable to the verdict, we find the following: Appellant and Harold David Edgens were employed at a Hormel meat packing plant for a short period of time in 1970 and 1971. Five or six years later, appellant and Edgens went to the plant to break into the coin and vending machines. They posed as employees so Carter, a security guard, would allow them entry into the plant. Carter saw appellant and Edgens attempting to retrieve money from the machines and told them they would be going to jail. Appellant and Edgens forced Carter into the employees' locker room and bound him with two leather belts and a long-sleeved shirt. They took Carter's wallet, keys, credit card, and driver's license. Appellant shot Carter in the back seven times as he was lying face down on the floor. No arrests were made and the case went cold in 1977.

Approximately 36 years later, in March of 2012, while housed as an inmate in the Georgia Diagnostic and Classification Prison in Jackson, Georgia, appellant confessed to a deputy warden and DeKalb County detectives that he and Edgens killed Carter. In so doing, appellant provided specific details about the murder which enabled the detectives to determine that appellant was indeed

2

one of the perpetrators. Latent fingerprints lifted from the crime scene[2] at the time of the murder had been archived in the latent print section. The latent fingerprint cards were retrieved and shown to match appellant's known fingerprints.

Appellant testified at trial, telling the jury that he was not at the meat packing plant when Carter was murdered. He claimed Edgens murdered Carter and told him the details of the crime in 1979.[3] Appellant said he falsely confessed to the murder of Carter, hoping that his cooperation would enable him to serve the remainder of his jail time in Mississippi[4] under more favorable conditions.[5]

---

[2] The prints were taken off an inoperable acetylene torch which appellant tried to use to open the coin and vending machines.

[3] However, in a police interview, appellant said he had not been in contact with Edgens since 1976.

[4] A Mississippi court sentenced appellant to life in prison for murder in 1983. See Div. 2, infra.

[5] The evidence demonstrated that appellant is imprisoned in the Special Management Unit of the Georgia Diagnostic and Classification Prison. This is a "high max" unit, housing the most dangerous inmates in the prison system. These inmates are placed in single-man cells. To leave the cells, these inmates are placed in handcuffs and leg irons; they are escorted by a minimum of two officers and, in some cases, as many as five. Appellant was placed in the Special Management Unit because he had a "high history of escapes." By his own estimate, appellant had escaped from prison four times.

1. Although appellant does not raise the general grounds, we have examined the evidence and find it sufficient to enable any rational trier of fact to find appellant guilty beyond a reasonable doubt of the crimes with which he was charged. Jackson v. Virginia, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979). See also Sheffield v. State, 281 Ga. 33, 34 (635 SE2d 776) (2006).

2. Prior to trial, the State informed appellant that it intended to introduce evidence showing appellant and an accomplice murdered a Mississippi state trooper in 1983. The State asserted the evidence was admissible to prove identity, motive and course of conduct and the trial court deemed it admissible on those grounds. Thereafter, in presenting its case-in-chief, the State introduced evidence over appellant's objection showing that, after escaping from a Georgia prison and fleeing to Mississippi, appellant and an accomplice murdered the trooper after he pulled them over in a traffic stop. The trooper was found lying face down; he was shot twice in the back of the head. Appellant pled guilty to that crime. In so doing, he admitted his presence and participation in the murder, but claimed his accomplice fired the shots that killed the trooper.

Appellant contends the trial court erred in admitting evidence of the Mississippi murder to show identity, motive and course of conduct under the

4

new Evidence Code. See OCGA § 24-4-404 (b).[6] We review this contention pursuant to a clear abuse of discretion standard. See Bradshaw v. State, 296 Ga. 650, 656 (769 SE2d 892) (2015).

Although evidence of other acts is inadmissible to show an accused's propensity to commit a crime, it may "be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." OCGA § 24-4-404 (b). To determine whether other acts evidence is admissible for these purposes under the new Evidence Code, the State must satisfy a three-part test: (1) the evidence needs to be relevant to an issue other than bad character; (2) the probative value of the other acts evidence cannot be outweighed substantially by its unfair prejudice; and (3) there must be sufficient proof to enable the jury to find that the accused committed the other acts. See State v. Jones, 297 Ga.

---

[6] This subsection provides: "Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. The prosecution in a criminal proceeding shall provide reasonable notice to the defense in advance of trial, unless pretrial notice is excused by the court upon good cause shown, of the general nature of any such evidence it intends to introduce at trial. Notice shall not be required when the evidence of prior crimes, wrongs, or acts is offered to prove the circumstances immediately surrounding the charged crime, motive, or prior difficulties between the accused and the alleged victim."

156, 158-159 (773 SE2d 170) (2015); <u>Bradshaw</u>, supra.

Here, appellant admitted committing the Mississippi murder. Thus, the State met the third part of the test for admissibility. With regard to the first part,[7] whether evidence of the Mississippi murder was relevant to the issues of appellant's identity, motive and course of conduct in the murder of James Carter, we examine these issues seriatim, looking to federal case law for guidance.[8]

*Identity.* "[E]vidence offered to prove identity must satisfy a particularly stringent analysis. When extrinsic offense evidence is introduced to prove identity, the likeness of the offenses is the crucial consideration. The physical similarity must be such that it marks the offenses as the handiwork of the accused. In other words, the evidence must demonstrate a modus operandi. The extrinsic act must be a 'signature' crime, and the defendant must have used a modus operandi that is uniquely his. The signature trait requirement is imposed

---

[7] In view of our ruling, we do not specifically address the second part of the test for admissibility.

[8] See Ga. L. 2011, p. 100, § 1 (where the General Assembly incorporated the language of the Federal Rules of Evidence in the new Evidence Code, it intended to adopt the Federal Rules as interpreted by the federal courts to the extent the interpretation is consistent with the Constitution of Georgia).

to insure that the government is not relying on an inference based on mere character – that a defendant has a propensity for criminal behavior. Evidence cannot be used to prove identity simply because the defendant has at other times committed the same commonplace variety of criminal act." United States v. Phaknikone, 605 F3d 1099, 1108 (11th Cir. 2010) (citations and quotation marks omitted). Following these principles, we conclude that, although the Mississippi murder and the murder of Carter bore some similarities,[9] evidence of the Mississippi murder was not admissible to prove identity because the crimes were not so similar as to mark the murders as the handiwork of appellant. On the contrary, the modus operandi for each murder was relatively commonplace – these were not signature crimes. Compare United States v. Clemons, 32 F3d 1504, 1508-1509 (11th Cir. 1994) (uncharged carjackings were sufficiently similar to the charged offense of a carjack-murder to warrant their admission in evidence to prove identity) with Amey v. State, 331 Ga. App. 244, 250 (770 SE2d 321) (2015) (prior armed robbery not admissible to prove identity because it was not sufficiently similar to charged offense of armed

---

[9] For example, both victims were shot more than once in the back (or back of the head) and were found lying face down on the ground.

7

robbery).  See also <u>United States v. Cardenas</u>, 895 F2d 1338, 1342 (11th Cir.

1990) ("A much greater degree of similarity between the charged crime and the

uncharged crime is required when the evidence of the other crime is introduced

to prove identity than when it is introduced to prove a state of mind.") (citation

and quotation marks omitted).

Moreover, under our new Evidence Code we are charged to consider the

dissimilarities as well as similarities in determining whether other acts evidence

is admissible to show identity.  See <u>United States v. Lail</u>, 846 F2d 1299, 1301

(11th Cir. 1988).[10]  In this regard, we note the murders in this case were

committed seven years and hundreds of miles apart.  One victim was bound

before he was forced to lie down and shot seven times; the other victim was not

bound and only shot twice.  One murder stemmed from an attempted theft; the

other came on the heels of a prison break.  In sum, the dissimilarities are stark

and militate against the supposition that the murders were committed by the

same person.  Compare <u>Clemons</u>, supra (three previous gunpoint carjackings

---

[10] This is a major difference from the old law in which we focused on the similarities, not the dissimilarities between the charged and uncharged acts.  See, e.g., <u>Johnson v. State</u>, 289 Ga. 22, 24 (709 SE2d 217) (2011) ("In assessing the admissibility of similar transaction evidence, the proper focus is on the similarities, not the differences, between the separate act and the crimes in question.")

within three weeks and near same vicinity as charged offense of carjacking-murder admissible to prove identity); Phaknikone, supra at 1110 (six bank robberies within six months and 40 mile radius established modus operandi where in each robbery the perpetrators wore black ski masks, white-topped gloves and hooded sweatshirts, and waved handguns while shouting profanities).

*Motive.* Motive is "the reason that nudges the will and prods the mind to indulge the criminal intent." United States v. Beechum, 582 F2d 898, 912, n. 15 (5th Cir. 1978) (en banc). Other acts evidence may be admitted to show motive under OCGA § 24-4-404 (b) even where, as in this case, it is extrinsic to the crime charged.[11] United States v. Frye, 193 Fed. Appx. 948, 951 (11th Cir. 2006). "Overall similarity between the charged crime and the extrinsic offense is not required when the offense is introduced to show motive. [Cit.]" Id. Even so, to be admitted to prove motive, extrinsic evidence must be "logically relevant and necessary to prove something other than the accused's propensity

---

[11] Evidence is intrinsic "if it is (1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense." United State v. Utter, 97 F3d 509, 513 (11th Cir. 1996).

to commit the crime charged." Milich, § 11.3 at p. 244. See also Bradshaw, supra at 657 (admissibility of other acts evidence calls for common sense approach, which includes prosecutorial need). To rule otherwise "would make all prior robberies admissible in any robbery case, all prior murders admissible in any murder case, and so on." Milich, § 11.13 at p. 318. The other acts evidence in this case does not meet the logically relevant and necessary test. Simply put, evidence of the 1983 murder of a Mississippi state trooper during a prison escape is unrelated and unnecessary to prove why appellant murdered a security guard in the course of a theft seven years earlier. Compare Bradshaw, supra at 657 (evidence of murder committed in Ohio six months before charged murder relevant to prove motive "because it demonstrated appellant's willingness to use violence when he or someone close to him is cheated in a drug deal"). Accordingly, evidence of the Mississippi murder was not admissible for the purpose of showing motive.

*Course of conduct.* The term "course of conduct" is noticeably absent from the list of purposes set forth in OCGA § 24-4-404 (b), and, although by its own terms that list is not exhaustive, our Court of Appeals has correctly observed that the "course of conduct" and "bent-of-mind" exceptions, formerly

an integral part of our law of evidence, have been eliminated from the new Evidence Code. McMullen v. State, 316 Ga. App. 684, 692, n. 30 (730 SE2d 151) (2012).[12] See also Ronald L. Carlson & Michael Scott Carlson, Carlson on Evidence, p. 139 (4th ed. 2016) (the major change in the new Evidence Code's approach to other acts evidence is the "the non-incorporation of 'bent of mind' and 'course of conduct' as . . . reasons for admitting" such evidence); Milich, § 11.13 at p. 331 ("Using phrases like 'bent of mind' or 'course of conduct' totally obscures the distinction between legitimate evidence and the prohibited evidence of character."). It was error for the trial court to admit evidence of the Mississippi murder to show course of conduct.

Having determined the trial court abused its discretion in admitting the

---

[12] Prior to the adoption of the new Evidence Code, use of other acts evidence to show "course of conduct" and "bent of mind" had been under fire intermittently. See, e.g., Farley v. State, 265 Ga. 622, 630 (458 SE2d 643) (1995) (Sears, J., concurring specially) ("'bent of mind' and 'course of conduct' have evolved into amorphous catch-phrases, difficult to define and slippery in application. . . . [C]areful analysis of the relevance of the evidence is especially important when those purposes are claimed. Such careful scrutiny is essential because a person's bent of mind is dangerously close to being his character, and a person's course of conduct could easily show nothing more than a mere propensity to act in a certain manner."); King v. State, 230 Ga. App. 301, 303 (496 SE2d 312) (1998) ("neither bent of mind nor course of conduct was an issue here unless the prosecution intended to show [defendant's] propensity to commit drug crimes"); Johnson v. State, 154 Ga. App. 793, 796-797 (270 SE2d 214) (1980), reversed, State v. Johnson, 246 Ga. 654 (272 SE2d 321) (1980) (lamenting use of other liquor sales in moonshining cases to prove course of conduct or bent of mind).

other acts evidence to prove identity, motive and course of conduct, we must now determine whether the error was harmless. "[T]he test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict." Peoples v. State, 295 Ga. 44, 55 (757 SE2d 646) (2014). Here, while evidence of appellant's guilt was sufficient to convict, it was not overwhelming. At the same time, we have no doubt that evidence of the murder of a state trooper was extremely prejudicial in the eyes of the jury. Based on this record, we cannot conclude it is highly probable that the erroneous admission of the challenged other acts evidence did not contribute to the verdict.

Judgment reversed. All the Justices concur.