McFadden, Presiding Judge, dissenting
The state has not shown that the trial court abused his broad discretion in ruling that the state cannot introduce at Plaines's trial other-act evidence under OCGA § 24-4-404 (b) to prove identity. Consequently, although we may have ruled differently had the issue been ours to decide in the first instance, we must affirm the trial court's decision.
"A trial court's decision under OCGA §§ 24-4-403 and 24-4-404 (b) to exclude or admit other acts evidence will be overturned only where there is a clear abuse of discretion." State v. Dowdell , 335 Ga. App. 773, 783 S.E.2d 138 (2016) (citation and punctuation omitted). In our review, we
must construe the evidentiary record in the light most favorable to the factual findings and judgment of the trial court. This means that [we] generally must accept the trial court's findings as to disputed facts unless they are clearly erroneous, although [we] may also consider facts that definitively can be ascertained exclusively by reference to evidence that is uncontradicted and presents no questions of credibility, such as facts indisputably discernible from a videotape.
State v. Allen , 298 Ga. 1, 2 (1) (a), 779 S.E.2d 248 (2015) (citations and punctuation omitted).
Other-act evidence, although inadmissible to show an accused's propensity to commit a crime, may "be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." OCGA § 24-4-404 (b).
To determine whether other acts evidence is admissible for these purposes under the new Evidence Code, the [s]tate must satisfy a three-part test: (1) the evidence needs to be relevant to an issue other than bad character; (2) the probative value of the other acts evidence cannot be outweighed substantially by its unfair prejudice; and (3) there must be
sufficient proof to enable *577 the jury to find that the accused committed the other acts.
Brooks v. State , 298 Ga. 722, 724 (2), 783 S.E.2d 895 (2016) (citation omitted).
The state sought to introduce the other-act evidence as relevant to prove Plaines's identity as the perpetrator of the Red and White burglary. The trial court implicitly ruled that the evidence was not relevant because the other-act evidence was not sufficiently similar to the instant crime so as to prove identity.
Evidence offered to prove identity must satisfy a particularly stringent analysis. When extrinsic offense evidence is introduced to prove identity, the likeness of the offenses is the crucial consideration. The physical similarity must be such that it marks the offenses as the handiwork of the accused. In other words, the evidence must demonstrate a modus operandi. The extrinsic act must be a "signature" crime, and the defendant must have used a modus operandi that is uniquely his. The signature trait requirement is imposed to ensure that the government is not relying on an inference based on mere character-that a defendant has a propensity for criminal behavior. Evidence cannot be used to prove identity simply because the defendant has at other times committed the same commonplace variety of criminal act.
Brooks , 298 Ga. at 725 (2), 783 S.E.2d 895 (citation and punctuation omitted). "A much greater degree of similarity between the charged crime and the [other] crime is required when the evidence of the other crime is introduced to prove identity than when it is introduced to prove a state of mind." United States v. Cardenas , 895 F.2d 1338, 1342 (11th Cir. 1990) (citation and punctuation omitted). Under our new Evidence Code, the trial court must "consider the dissimilarities as well as similarities in determining whether other acts evidence is admissible to show identity." Brooks , 298 Ga. at 725 (2), 783 S.E.2d 895 (citation omitted).
Here, as the majority observes, the trial court found that there were similarities between the two burglaries: the fronts of both stores were entered with crowbars; the ATMs were cut into with orange circular concrete saws; and the saws appeared to be identical. But the trial court also found that there were differences: there were three individuals involved in the Red and White burglary and only two involved in the Food Lion burglary (although only one was apprehended); only one individual, Plaines, entered the Food Lion, while the surveillance video of the Red and White burglary shows three individuals inside the store ; and the stolen F-250 was only present at the Red and White burglary.
Further, the court noted the inconsistency in the detective's testimony regarding the uniqueness of using a concrete saw to access an ATM. The detective's testimony was the only evidence the trial court mentioned in his order about the uniqueness of the crime. See Hughes v. State , 296 Ga. 744, 746 (1), 770 S.E.2d 636 (2015) (we must focus on the facts found by the trial court in its order since the trial court sits as the trier of fact) (citation omitted). The court concluded that it could not "say that the use of the concrete saw to access the ATM is so unique to demonstrate a modus operandi or signature crime," and thus that the state did not meet the first part of the three-part test set forth at Brooks , 298 Ga. at 725 (2), 783 S.E.2d 895. So the court did not address the remaining parts of the test.
In seeking reversal, the state points to similarities between the two crimes that the trial court did not find as fact. For example, the state argues that the trial court ignored the fact that the exact same tools were used in both crimes. But the trial court did not find that the perpetrator of the Red and White burglary used the same orange Husqvarna saw as Plaines did in the Food Lion burglary, only that the perpetrator used an orange concrete saw that appeared identical but that nothing linked it to Plaines. The state argues that Plaines is seen in the video of the Food Lion burglary using a crowbar of the same color as one of the crowbars used in the Red and White burglary. But the trial court made no finding of fact regarding the color of the crowbar in the Food Lion burglary, and from our review of the surveillance video, the color of the crowbar is not "indisputably discernible."
*578 State v. Allen , supra, 298 Ga. at 2 (1) (a), 779 S.E.2d 248 (citation and punctuation omitted). The state argues that the detective testified that both ATMs exhibited very similar cuts around the cash box, but the court made no findings regarding the location of the cuts in the Food Lion ATM.
Properly applied,
the abuse-of-discretion review recognizes the range of possible conclusions the trial judge may reach, and that there will often be occasions in which we will affirm the evidentiary ruling of a trial court even though we would have gone the other way had it been our call.... [The standard] does not permit a clear error of judgment or the application of the wrong legal standard.
Williams v. State , 328 Ga. App. 876, 880 (1), 763 S.E.2d 261 (2014) (citations and punctuation omitted). So it is not surprising that the majority has failed to cite a single case in which we or our Supreme Court reversed a trial court's decision to exclude other-act evidence.
In this case, the state has not shown error in the trial court's performance of the "particularly stringent" analysis required. Brooks , 298 Ga. at 725 (2), 783 S.E.2d 895. Nor has the state shown the application of the wrong legal standard. And it was the trial court's responsibility to assess the credibility of the detective's testimony about the uniqueness of this type of crime. For these reasons, I cannot say that the trial court abused his discretion in ruling that the evidence of the Food Lion burglary is inadmissible at Plaines's trial for the Red and White burglary. See Dowdell , 335 Ga. App. at 773, 783 S.E.2d 138.