**FIFTH DIVISION**
**RICKMAN, C. J.,**
**MCFADDEN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**September 23, 2021**

# In the Court of Appeals of Georgia

A21A1037. TARIQ-MADYUN v. THE STATE.

McFADDEN, Presiding Judge.

After a jury trial, Kaleem Tariq-Madyun was convicted of armed robbery. He argues on appeal that the trial court erred in allowing him to waive his right to counsel and represent himself at trial, but his colloquy with the trial court on the issue of self-representation supported the ruling. He argues that the trial court erred in admitting evidence of his prior robbery convictions, but he has not shown that the trial court abused his discretion. Finally, he argues that the trial court erred in sentencing him as a recidivist, but none of his arguments in support of this claim of error have merit. So we affirm.

1. *Facts and procedural history.*

Tariq-Madyun has not challenged the sufficiency of the evidence supporting his convictions and our resolution of his claims of error relating to his waiver of the right to counsel and his recidivist sentence do not rest on a review of the trial evidence. His claim of error relating to the admission of the other acts evidence, however, requires a close assessment of that evidence within the context of all of the evidence presented at trial. For that reason, "we lay out the evidence in considerable detail and not only in the light most favorable to the jury's verdicts." *Heard v. State*, 309 Ga. 76, 77 (1) n. 2 (844 SE2d 791) (2020).

The trial evidence showed that between 5 a.m. and 6 a.m. on October 13, 2018, a man robbed a fast food restaurant shortly after it opened. He was tall and wore black clothing including a hoodie, gloves, and a mask that covered his entire face. He carried a gun.

The robber entered the restaurant and pointed a gun at the first person he encountered, speaking softly to her and telling her to be quiet and gather her belongings. He then forced all of the employees, at gunpoint, into the walk-in cooler at the back of the store. He demanded that the restaurant's manager take him to the restaurant office. Two managers accompanied him there. The robber appeared to know that the office safe would contain envelopes with money, which he demanded.

2

At his direction, the managers removed the money from the safe and placed it into a bag that the man had taken from a nearby trash can and held out to them. The money taken by the robber was mainly in denominations of five- and one-dollar bills.

The robber took the two managers back to the cooler, again at gunpoint, then left the restaurant and ran into an adjacent wooded area. Meanwhile, the employees escaped through the cooler's exterior door and ran across a parking lot to another restaurant where law enforcement officers were eating. Those officers immediately called for backup and began investigating the robbery.

Investigating law enforcement officers learned that, about an hour before the robbery, another officer had spotted a car on an access road on the other side of the wooded area into which the robber had fled, approximately 100 yards from the restaurant. Believing the car was abandoned, the officer had taken down its tag number. When the investigators went to the access road to find that car, it was gone. From its tag number, they learned that the car had been rented several days before by Tariq-Madyun, a ride-share driver who had been working in the area the previous evening.

After obtaining a warrant, law enforcement officers searched Tariq-Madyun's home and the rental car. In his bedroom, they found black clothing and a cell phone

in a case that also contained Tariq-Madyun's driver's license. In the car they found $74 in denominations of five- and one-dollar bills, a full-face mask, gloves, and shoes matching those worn by the robber, and a gun. Tariq-Madyun's DNA was found on the mask. Cellular phone records placed Tariq-Madyun's phone at the access road around 4 a.m. the morning of the robbery.

None of the victims affirmatively identified Tariq-Madyun as the robber. One of the victims, however, testified that she could discern the shape of the robber's facial features through his fabric face mask, which rested tightly against his face, and that the features matched those of Tariq-Madyun.

The state presented evidence that, in 2006, Tariq-Madyun had pleaded guilty to and been convicted of several armed robberies of fast-food restaurants or other, similar restaurants in Alabama. In each of those robberies, Tariq-Madyun had entered the restaurant at a time that was not very busy, either shortly after opening or shortly before closing; had worn black clothing including a hood or hat and a mask; had worn gloves; had possessed the same type of gun (a black, semiautomatic pistol); had spoken to the first person he approached with a calm demeanor; had forced the restaurant employees at gunpoint into the back of the restaurant and made them lie on the floor; had singled out a person to accompany him to the place where the

4

restaurant kept its money, such as the office; had instructed that person to place the money into a bag that he held out to them; had then made that person return to the group of employees; and had left the premises on foot.

2. *Waiver of the right to counsel.*

Tariq-Madyun argues that the trial court erred in accepting his waiver of his right to counsel without first advising him that his "sovereign citizen" defense was meritless. We disagree.

A criminal defendant "has a fundamental right to represent himself in a state criminal trial when he voluntarily and intelligently elects to do so." *Clarke v. Zant*, 247 Ga. 194, 195 (275 SE2d 49) (1981) (citation and punctuation omitted). "Under *Faretta* [*v. California*, 422 U. S. 806 (95 SCt 2525, 45 LE2d 562) (1975),] the trial court must apprise the defendant of the dangers and disadvantages inherent in representing himself so that the record will establish that he knows what he is doing and his choice is made with eyes open." *State v. Evans*, 285 Ga. 67, 68 (673 SE2d 243) (2009) (citation and punctuation omitted). On appeal, the state bears the "burden of showing that [the] defendant received sufficient information and guidance from the trial court to make a knowing and intelligent waiver of the right to trial counsel[.]" *Renfro v. State*, 348 Ga. App. 615, 617 (2) (824 SE2d 75) (2019) (citation and

5

punctuation omitted). We review the trial court's ruling on this issue for abuse of discretion. Id.

The record shows that, after Tariq-Madyun stated his desire to represent himself, the trial court engaged in a waiver colloquy with him. See generally *Wiggins v. State*, 298 Ga. 366, 368 (2) (782 SE2d 31) (2016) (once a defendant makes a pre-trial, unequivocal assertion of the right to self-representation, the trial court must engage in a hearing to ensure the defendant knowingly and intelligently waives his right to counsel). The trial court set out the offenses alleged in the indictment and informed Tariq-Madyun of the maximum penalty for each offense. The trial court informed Tariq-Madyun that he might have possible defenses to the charges or other arguments in favor of acquittal and told him that an attorney could give him "independent perspective . . . in analyzing, reviewing, and presenting the case in the most effective way." The trial court stated that self-representation "may result in consequences to [Tariq-Madyun's] detriment" and warned him of disadvantages to self-representation: that Tariq-Madyun would not be entitled to any special treatment from either the trial court or the prosecutor; that he would be assuming full responsibility for his defense, including as to "the technical rules of substantive law, criminal procedure, and evidence for making motions, objections, presentation of the

6

evidence, and all other matteres related to this trial"; and that he might "miss important defenses to the case because of [his] lack of knowledge of the law[.]" In response to questions from the trial court, Tariq-Madyun confirmed that he had a high school equivalency diploma, that he could read and write the English language, that he was not currently under the care of any mental health professional, and that he was not currently under the influence of any drugs, prescription medications, or alcohol.

Tariq-Madyun then made a statement to the trial court suggesting that he intended to pursue a "sovereign citizen"-type defense and asked the trial court if the court had "jurisdiction over the matter and person at this point in time[.]" The trial court responded that it did "exercise proper jurisdiction" in the case. Tariq-Madyun stated that he had no further questions, and the trial court found that he had "freely, knowingly, and voluntarily chosen to waive counsel and represent himself," held that he could proceed pro se, and appointed his former counsel as standby counsel for the trial.

The trial court's colloquy with Tariq-Madyun sufficiently apprised him of the dangers and disadvantages inherent in self-representation. See *State v. Evans*, 285 Ga. 67, 68 (673 SE2d 243) (2009); *Haynes v. State*, 356 Ga. App. 631, 634 (1) (848 SE2d 644) (2020). Compare *Martin-Argaw v. State*, 343 Ga. App. 864, 870 (2) (806 SE2d

7

247) (2017) (reversing conviction and remanding case for new trial where the "trial court did not articulate on the record an express finding that [the defendant] knowingly and voluntarily waived his right to counsel" and the record as a whole did not demonstrate that the defendant was made aware of the dangers of self-representation beyond the fact that "he would be required to abide by evidentiary and procedural rules without the court's assistance").

Nevertheless, Tariq-Madyun argues that the trial court was also required to tell him that his sovereign citizen defense would not succeed. "The so-called sovereign citizen defense is one in which an individual claims that he or she is not subject to the jurisdiction of courts and government agencies, alleging that the government is illegitimate, and it is a defense that has no conceivable validity in American law." *Morman v. State*, 356 Ga. App. 685, 686 n. 2 (848 SE2d 165) (2020) (citations and punctuation omitted).

Although Tariq-Madyun acknowledges in his appellate brief that "[t]here is no present case law requiring a specific advisement that sovereign citizen defenses are futile," he asks us to extend our existing law to mandate such a bright-line rule. We decline to do so. Decisions of our Supreme Court and this court make clear that the validity of a waiver of counsel is a case-by-case determination, and, in making that

8

determination, the trial court is not required to use any particular language, probe a defendant's case and advise him on legal strategy, make any specific inquiries of a defendant, or apprise a defendant of the specific dangers of self-representation inherent in the defendant's particular case. See, e.g., *Wiggins v. State*, 298 Ga. 366, 369 (2) (782 SE2d 31) (2016); *Evans*, 285 Ga. at 69; *Jones v. State*, 272 Ga. 884, 886 (2) (536 SE2d 511) (2000); *Wayne v. State*, 269 Ga. 36, 38 (2) (495 SE2d 34) (1998); *Haynes*, 356 Ga. App. at 632 (1); *Martin-Argaw*, 343 Ga. App. at 867-868 (2). A defendant's "technical legal knowledge [is] not relevant to an assessment of his knowing exercise of the right to defend himself." *Faretta*, 422 U. S. at 836 (V). Accord *Evans*, 285 Ga. at 69; *Lamar v. State*, 278 Ga. 150, 153 (1) (b) (598 SE2d 488) (2004).

Moreover, the record in this case shows that, during the waiver colloquy, the trial court expressly rejected the jurisdictional argument central to a sovereign citizen defense. As described above, in response to a question from Tariq-Madyun, the trial court plainly stated that he had jurisdiction over the criminal proceedings against him. This undercuts Tariq-Madyun's argument that he did not have the necessary information to intelligently, freely, and voluntarily waive his right to counsel. See *Haynes*, 356 Ga. App. at 634 (1) (considering, in affirming the trial court's ruling that

9

the defendant had intelligently, freely, and voluntarily waived his right to counsel, the defendant's awareness that his sovereign citizen defense was meritless).

For these reasons, we find no error in the trial court's acceptance of Tariq-Madyun's waiver of counsel. "[U]pon being apprised by the trial court of th[e] dangers and disadvantages [inherent in self-representation], a competent defendant who nevertheless chooses to proceed pro se has validly waived the right to counsel under our Federal and State constitutions and is entitled to exercise his or her constitutional right to self-representation." *Lamar*, 278 Ga. at 152 (1) (b) (punctuation omitted).

3. *Other acts evidence.*

Tariq-Madyun argues that the trial court erred in admitting his prior robbery convictions as other acts evidence under OCGA § 24-4-404 (b) ("Rule 404 (b)"). We disagree.

Rule 404 (b) permits the admission of evidence of other crimes, wrongs, or acts for purposes other than to prove character. It "explicitly recognizes the relevance of other acts evidence offered for a permissible purpose and, at the same time, prohibits the admission of such evidence when it is offered *solely* for the impermissible purpose of showing a defendant's bad character or propensity to commit a crime."

10

*Flowers v. State*, 307 Ga. 618, 621 (2) (837 SE2d 824) (2020) (citation and punctuation omitted; emphasis in original). In determining whether to admit other acts evidence under Rule 404 (b), the trial court must examine whether "(1) the other acts evidence is relevant to an issue other than the defendant's character, (2) the probative value is not substantially outweighed by undue prejudice under OCGA § 24-4-403 ("Rule 403"), and (3) there is sufficient proof that a jury could find by the preponderance of the evidence that the defendant committed the acts." *Flowers*, 307 Ga. at 621 (2) (citation, punctuation, and footnote omitted).

Tariq-Madyun does not argue that the state failed to meet its burden on the first part of this test. He concedes that the other acts evidence was relevant to prove the purposes for which the state offered it — identity, intent, motive, plan, preparation, and knowledge — and he concedes that these were proper purposes under Rule 404 (b). He asserts in his appellate brief that "[i]f the [s]tate satisfied parts two and three of the test, the evidence would have been proper." So we address only the second and third parts of the Rule 404 (b) test. See *Hood v. State*, 309 Ga. 493, 499 (2) (847 SE2d 172) (2020). "We will affirm the trial court's decision to admit other acts evidence absent a clear abuse of discretion." *Lofland v. State*, 357 Ga. App. 92, 94 (1) (850 SE2d 175) (2020).

11

(a) *There was sufficient proof that Tariq-Madyun committed the prior robberies.*

Turning first to the third part of the Rule 404 (b) test, we find no merit in Tariq-Madyun's argument that the state failed to present sufficient proof that he had committed all of the six prior robberies. At trial, the state introduced certified copies of Tariq-Madyun's guilty pleas for the robberies, which were sufficient proof that he committed those crimes. See *Harvey v. State*, 344 Ga. App. 761, 771 (2) (a) (iii) (811 SE2d 479) (2018).

(b) *The probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.*

Turning next to the second part of the Rule 404 (b) test, we are not persuaded by Tariq-Madyun's argument that the trial court should have excluded the other acts evidence under Rule 403, which pertinently permits the exclusion of otherwise relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice[.]" This rule

> is one of inclusion, and the exclusion of evidence under its balancing test is an extraordinary remedy which should be used only sparingly. The Rule 403 analysis requires the trial court to exercise [his] discretion

12

and make a common sense assessment of all the circumstances surrounding the extrinsic act[s] and the charged offense.

*Lofland*, 357 Ga. App. at 95 (1) (a) (citations and punctuation omitted). "The major function of Rule 403 is to exclude matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *Olds v. State*, 299 Ga. 65, 70 (2) n. 7 (786 SE2d 633) (2016) (citation and punctuation omitted).

Tariq-Madyun makes two arguments in support of his claim that the trial court, in applying the Rule 403 balancing test, should have excluded the other acts evidence from being used to prove his identity: because the prior robberies were not "signature" crimes using a modus operandi that was uniquely his; and because the state did not need the evidence to prove his identity. We are not persuaded by either argument, which we address in turn.

It is true that other acts evidence "cannot be used to prove identity simply because the defendant has at other times committed the same commonplace variety criminal act[,]" but instead "[t]he extrinsic act must be a 'signature' crime and the defendant must have used a modus operandi that is uniquely his." *Brooks v. State*, 298 Ga. 722, 725 (2) (783 SE2d 895) (2016) (citations omitted). This requirement, however, pertains to the first part of the Rule 404 (b) test: the *relevance* of the

13

evidence. See *Heard*, 309 Ga. at 85 (3) (b), 88-90 (3) (f) ("conclud[ing] that the trial court abused its discretion in ruling that the [other act] evidence . . . was *relevant*" for proving identity because the state did not show that the extrinsic act was a "signature" crime) (emphasis supplied); *Sloan v. State*, 351 Ga. App. 199, 206-207 (2) (a) (830 SE2d 571) (2019) (holding other acts evidence was not relevant to prove identity because the extrinsic crimes were not sufficiently similar with the charged crime to demonstrate that they were "signature" crimes). As stated above, Tariq-Madyun concedes in his appellate brief that the other acts evidence in this case was relevant to prove his identity and so the state met the first part of the Rule 404 (b) test.

But even if we also apply the "signature" crime requirement to the second part of the Rule 404 (b) test — the balancing of probative value against the danger of unfair prejudice under Rule 403 — the trial court did not abuse his discretion in admitting the evidence. As our Supreme Court has explained,

> it is not necessary that the charged crime and the other crimes be identical in every detail. But they must possess a common feature or features that make it very likely that the unknown perpetrator of the charged crime and the known perpetrator of the uncharged crime are the same person. The more unique each of the common features is, the smaller the number that is required for the probative value of the evidence to be significant. But a number of common features of lesser

14

uniqueness, although insufficient to generate a strong inference of identity if considered separately, may be of significant probative value when considered together.

*Heard*, 309 Ga. at 88 (3) (f) (citation omitted).

Several common features exist between the six prior robberies committed by Tariq-Madyun and the robbery with which he was charged in this case. All of the robberies were of restaurants. The robberies all occurred either shortly after opening or shortly before closing, at times when few people were in the restaurants. In each case the robber followed the same procedure. He entered the restaurant and first approached someone using a calm demeanor. He then corralled all of the employees at gunpoint to a single, contained location. He separated out someone to take him to the location where the restaurant's money was kept, held open a bag, and demanded that the person place the money in the bag. He then returned that person to the group before leaving the restaurant on foot. In every instance, the robber was wearing dark clothing, gloves, and a mask that covered his face. Although these similarities are not unique, several are distinctive and, considered together, they go beyond establishing merely the "same commonplace variety of criminal act." *Brooks*, 298 Ga. 275 (2) (citation omitted).

15

And there are no major differences between the six prior robberies committed by Tariq-Madyun and the charged crime in this case. Cf. *Heard*, 309 Ga. 89 (3) (f) (finding that the "similar (but not unique) features of the charged and uncharged crimes in [that] case [were] undermined by the major differences between them"); *Brooks*, 298 Ga. at 726 (2) (finding no "signature" crime where "the dissimilarities are stark and militate against the supposition that the [crimes] were committed by the same person"). Instead, the dissimilarities were relatively minor: the robber in this case wore black gloves rather than food-service style gloves; he forced the restaurant employees into the restaurant's cooler rather than having them lie on the floor; and he took a bag from a trash can at the scene rather than bringing a bag with him.

Considering all of the similarities and dissimilarities between the six prior robberies and the charged crime in this case, "[w]e find that the modus operandi for each [robbery] was sufficiently similar to mark the offenses as [Tariq-Madyun's] handiwork," *Brannon v. State*, 298 Ga. 601, 607 (4) (783 SE2d 642) (2016), and that the common features of the charged crime and the prior robberies have "significant probative value when considered together." *Heard*, 309 Ga. at 88 (3) (f) (citation omitted).

16

Nevertheless, Tariq-Madyun argues that this probative value was substantially outweighed by the danger of unfair prejudice because the state did not need the other acts evidence to prove his identity as the robber and so the evidence had little marginal worth. The marginal worth of other acts evidence and prosecutorial need for it are factors in determining the evidence's probative value. See *Olds*, 299 Ga. at 75-76 (2). But in this case both the marginal worth of the evidence and the prosecutorial need for it to prove his identity were greater than Tariq-Madyun represents. No eyewitnesses positively identified Tariq-Madyun as the robber. The robber wore a full-face mask during the robbery and the only eyewitness who testified on the issue did not see the robber's face uncovered; instead, she perceived his features through a full-face mask and merely testified that the features resembled those of Tariq-Madyun. And while there was physical evidence implicating him, such as the clothing, money, mask, and gun found in his home and rental car, there was no direct evidence identifying him as the robber. So the evidence that Tariq-Madyun had committed other robberies with a very similar modus operandi had significant probative value in this case.

That evidence "was obviously prejudicial to [Tariq-Madyun], but the trial court could reasonably conclude that this prejudice did not substantially outweigh the

significant probative value of the prior [robberies]." *McKinney v. State*, 307 Ga. 129, 138 (3) (b) (834 SE2d 741) (2019). See *Smart v. State*, 299 Ga. 414, 419 (2) (b) (788 SE2d 442) (2016) (the mere fact that the other acts evidence was prejudicial does not compel exclusion of the evidence because "almost all evidence presented by the [s]tate will be [prejudicial]"). Moreover, the trial court gave the jury a limiting instruction on the use of this evidence both at the time of its admission and in the final jury charge, thereby mitigating its prejudicial impact. See *McKinney*, 307 Ga. at 138 (3) (b). "For these reasons, the trial court did not abuse [his] discretion in admitting this evidence to prove identity." Id.

Because the evidence was admissible to prove identity, we need not address its admissibility to show the other purposes for which it was offered — intent, motive, plan, preparation, knowledge. See *Thompson v. State*, 308 Ga. 854, 859 (2) n. 6 (843 SE2d 794) (2020); *McKinney*, 307 Ga. at 138 (3) (b) n. 7.

4. *Recidivist sentence.*

Tariq-Madyun argues that the trial court erred in sentencing him as a recidivist. In support of this claim, he argues that the record does not include certified copies of Tariq-Madyun's prior convictions, that the trial court did not properly conclude that the prior convictions were qualifying predicate convictions for enhanced punishment,

18

and that the trial court failed to exercise discretion afforded by the recidivist sentencing statute. None of these claims have merit.

(a) *The record contains a certified copy of the prior convictions.*

Contrary to Tariq-Madyun's assertion, the record does contain a certified copy of his prior convictions. The trial transcript shows that the trial court admitted a certified copy of the prior convictions into evidence, and although the appellate record transmitted by the clerk of the trial court initially failed to include the exhibit page containing the certification, the clerk later supplemented the appellate record with that missing page. So Tariq-Madyun has shown no error.

(b) *The prior robbery convictions permit recidivist sentencing.*

Tariq-Madyun argues that the trial court erred in determining that his prior robbery convictions were qualifying predicate convictions authorizing the trial court to sentence him as a recidivist. We disagree.

Under Georgia's general recidivist sentencing statute, OCGA § 17-10-7, "a trial court is required to impose an enhanced sentence if the [s]tate satisfies certain prerequisites, including proof of one or more qualifying prior convictions[.]" *Nordahl v. State*, 306 Ga. 15, 17 (1) (829 SE2d 99) (2019) (citation omitted). A qualifying prior conviction, or predicate conviction, is a conviction "of a felony offense in this

state or . . . under the laws of any other state or of the United States of a crime which if committed within this state would be a felony [under which the defendant would be] sentenced to confinement in a penal institution[.]" OCGA § 17-10-7 (a). See also OCGA § 17-10-7 (c) (pertaining to enhanced punishment for a person who previously has been convicted of three or more such crimes).

The general recidivist sentencing statute requires an "elements-only" approach to evaluating predicate convictions. *Nordahl*, 305 Ga. at 19 (1). The sentencing court must "identif[y] those elements that were established by virtue of the prior conviction itself, that is, those facts that the jury was necessarily required to find to render a guilty verdict or those facts the court was necessarily required to find to satisfy the factual basis for a guilty plea." Id. at 22 (2) (emphasis omitted). The sentencing court

> parses the elements of the prior out-of-state . . . crime and determines whether those elements satisfy the statutory definition of a felony under Georgia law. When the out-of-state . . . offense sets out a single (or "indivisible") set of elements to define a single crime, the sentencing court lines up that crime's elements alongside those of the state offense and sees if they match.

Id. at 23 (3) (citation, punctuation, and emphasis omitted). A different approach applies when the out-of-state offense "sets forth multiple crimes and is, thus, 'divisible.'" Id. at 23 (3) (citation and punctuation omitted).

In reviewing the trial court's recidivist sentencing decision under this analytical framework,

> we first identify the [out-of-state] crime[s] used to enhance [Tariq-Madyun's] sentence under OCGA § 17-10-7 (a) and (c), consider whether [each] crime is divisible, and then parse [each] crime's elements[.] After establishing the elements of the [out-of-state] predicate conviction[s], we determine whether those elements would describe a felony under Georgia law.

*Nordahl*, 306 Ga. at 24 (4).

The record shows that Tariq-Madyun was convicted of six violations of Ala. Code § 13A-8-41. That Code section pertinently provides: "A person commits the crime of robbery in the first degree if he violates Section 13A-8-43 [pertaining to robbery in the third degree] and he: (1) Is armed with a deadly weapon or dangerous instrument; or (2) Causes serious physical injury to another." Ala. Code § 13A-8-41 (a). A violation of § 13A-8-43 occurs

> if in the course of committing a theft [a person]: (1) Uses force against the person of the owner or any person present with intent to overcome

21

his physical resistence or physical power of resistence; or (2) Threatens the imminent use of force against the person of the owner or any person present with intent to compel acquiescence to the taking of or escaping with the property.

Ala. Code § 13A-8-43 (a).

The essential elements of the crime of first-degree robbery, as set forth in the above Code sections, would describe a felony under Georgia law. See, e.g., OCGA § 16-8-40 (describing elements of the felony of robbery); OCGA § 16-8-41 (describing elements of the felony of armed robbery). And in his appellate brief, Tariq-Madyun does not argue otherwise.

Instead he argues that the trial court was required to set forth this analysis explicitly on the record. But he cites to no authority establishing such a requirement, and absent any showing to the contrary, we presume that the trial court followed the law in sentencing him. See *Lee v. State*, 324 Ga. App. 28, 31 (1) (749 SE2d 32) (2013); *Rivers v. State*, 270 Ga. App. 633, 635 (1) n. 5 (607 SE2d 144) (2004).

Tariq-Madyun also argues, without citation to authority, that the trial court could not sentence him as a recidivist because the state did not provide the trial court with proof of the elements of the offense set forth in Ala. Code § 13A-8-41. But

22

under OCGA § 24-2-220, the trial court could take judicial notice of the Alabama statute "without the introduction of proof."

(c) *Tariq-Madyun has not shown that the trial court failed to exercise discretion in sentencing.*

Finally, Tariq-Madyun argues that the trial court erred by failing to exercise discretion in sentencing under OCGA § 17-10-7 (a) of the general recidivist sentencing statute, which provides that "unless otherwise provided by law, the trial judge may, in his or her discretion, probate or suspend the maximum sentence prescribed for the offense." In support of this argument, he asserts that the prosecutor misinformed the trial court on this point and that, in sentencing him, the trial court did not expressly indicate he was exercising discretion. But Tariq-Madyun made this exact argument in his motion for new trial, and the trial court rejected the argument when he denied the motion in an order stating that he had heard all of Tariq-Madyun's arguments. We may infer from this ruling that, in imposing the sentence, the trial court took into account the discretion afforded him by the recidivist sentencing statute. So Tariq-Madyun has not shown error.

*Judgment affirmed. Rickman, C. J., and Senior Appellate Judge Herbert E. Phipps concur.*