**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the
# Supreme Court of Georgia

No. S26A0530
Jerrome Tyvone Miller
v.
The State

On Appeal from the Superior Court of Richmond County
No. 2022RCCR00182

Decided: May 19, 2026

LAND, Justice.

Jerrome Tyvone Miller was charged with malice murder and other crimes in connection with the shooting death of Felycya Harris after law enforcement identified him – through conversations with Kianna Cunningham – as the user of a phone number that had been in contact with Harris the night of her death. In addition to connecting Miller to the phone number, Cunningham identified Miller as the man who shot her a year after the Harris shooting. Miller filed a pre-trial motion to exclude Cunningham's testimony, specifically as it related to the alleged shooting against her. The trial court denied the motion, finding that the evidence of the Cunningham shooting was admissible for the purpose of establishing Miller's identity pursuant to OCGA § 24-4-404(b) ("Rule 404(b)"). We granted Miller's application for interlocutory appeal. On appeal, the parties agree that the trial court's stated reason for its pre-trial ruling is an abuse of discretion, and we now vacate that ruling and remand the case to the trial court for further proceedings consistent with this opinion.

## 1. *Background*

(a) The facts as alleged by the parties during the pre-trial motion hearing show as follows. In the early morning hours of October 3, 2020, Harris was shot and killed in a park in Richmond County. Investigators attempted to gain access to Harris's cell phone but were unable to do so at the time.[1]

A year after Harris's murder, investigators gained access to her phone and identified the last phone number, ending in -5309, that her phone was in communication with prior to her death. Harris's phone had been in contact with that number, via both text and phone conversations, until the time that investigators believed she was killed. In those text messages, the parties discussed "meeting up for sex" in exchange for money,[2] and the -5309 number suggested the park as a meeting location. Harris's phone then received a text message from the -5309 number saying, "[H]ey, I'm here. Where are you?" The State contends that cell site location data indicates that the person using the -5309 number was "either [at the park] or was on his way there." However, investigators could not locate any subscriber information associated with the -5309 number.

Investigators later obtained cell phone records for the -5309 number and noticed that the first number the phone called after being activated was a number ending in -8300.[3] They

---

[1] Investigators found a 9mm shell casing at the scene, but no other forensic evidence was recovered in relation to the murder.

[2] According to the State, Harris was "very notorious for extorting men" and would "sell her body for sex."

[3] Investigators were interested in this number because it is common for people who use burner phones to "call a phone number that they do possess" to "activate [the burner phone] or to make sure it's working and is properly in service." If true here, that would suggest that the owner and/or possessor of the -5309 number and the -8300 number were the same person.

discovered that the -8300 number was associated with Miller. Investigators then obtained cell phone records for the -8300 number and found that one of the phone's most frequent contacts was a number ending in -2098. Investigators searched for the -2098 number online and identified Kianna Cunningham as connected to that number. When investigators attempted to get into contact with Cunningham, they learned that she had recently been shot and was currently in the hospital.

On October 8, 2021, an investigator went to the hospital to see if Cunningham could confirm Miller's identity, since her phone number had been in frequent contact with his. Cunningham was shown a photographic lineup, which included Miller, "for the sole purpose of identifying [Miller] with that [-8300] phone number." Cunningham provided that identification but also identified Miller – known to her only as "Jay" – with "one hundred percent" certainty as the man who shot her because she recognized "the way he was talking, the way he walked, his height, and his body weight." Cunningham said that she had known Miller for about four years,[4] and that he would call and send text messages from various phone numbers – two of which ended in -5309 and -8300.[5]

The investigator conducted a second interview with Cunningham at her home on October 15, 2021, during which she continued to provide statements about how she knew Miller. She also showed investigators text messages on her phone from the -8300

---

[4] To establish her familiarity with Miller, Cunningham explained that he was about 5'11" tall, listed some of the vehicles that he typically drove, mentioned that he sold her methamphetamines, and recalled that he had stolen a gun from her in September 2020. (The State does not allege that this gun was the weapon used to kill Harris.)

[5] Some of these messages discussed "meeting up for sex."

number, including one from sometime after Harris's murder stating "lose [my] burner number. It's been tapped by the police."

Despite the information provided by Cunningham, law enforcement ultimately "closed out the case without any indictment or arrest of [Miller]" in relation to the Cunningham shooting because they determined that Cunningham's statements were not credible. Cunningham's statements were inconsistent,[6] and her boyfriend gave a physical description of the shooter that conflicted with Miller's appearance.[7] In addition, Cunningham was "heavily medicated at the time that she identified [Miller]," and she later "refused to submit to a polygraph test to verify whether or not her statement was accurate."[8] There was also evidence that, soon after Cunningham came out of surgery following the shooting and the medicine was out of her system, she sent a text message to a friend saying, "I think I might have just effed [sic] up." Miller was, however, identified as the suspect in the Harris shooting; he was arrested on November 20, 2021, and charged with Harris's murder.[9]

(b) On August 19, 2025, Miller filed a pre-trial motion to

---

[6] Cunningham initially told law enforcement that she "was not familiar with her shooter and had never met him prior to the day of her shooting." But she later explained how she recognized Miller and said that she had known him for about four years and had "spent time" with him prior to her shooting.

[7] Cunningham's boyfriend told law enforcement that he "observed the potential shooter as a 5'8" individual with dreadlocks driving [a] black Impala," but Miller was "clean shaven … at the time of the shooting" and between 5'10" and 5'11" tall.

[8] According to Miller's trial counsel, Cunningham told investigators that "if she had to submit to a polygraph she would rather not prosecute at all."

[9] On February 8, 2022, a Richmond County grand jury indicted Miller, charging him with malice murder (Count 1), felony murder (Count 2), and possession of a firearm during the commission of a felony (Count 3) in relation to the shooting death of Harris.

exclude the anticipated Cunningham shooting evidence, arguing that it would constitute prejudicial character evidence and would, thus, be inadmissible under Rule 404(b).[10] The trial court held a hearing on the motion, and the State argued that the evidence was admissible for purposes of identity and motive or, alternatively, as intrinsic evidence. In its August 25, 2025 order, the court denied Miller's motion to exclude based on its express finding that Cunningham's testimony about her shooting was admissible for the purpose of proving Miller's identity.

In its consideration of the admissibility of the Cunningham shooting evidence, the trial court first noted that,

> for 404(b) evidence to be admissible, a three prong test must be met, which requires the State to show (1) the evidence is relevant to an issue other than bad character; (2) the probative value of the other acts evidence is not outweighed substantially by its unfair prejudice; and (3) there is sufficient proof to enable the jury to find that the accused committed the other acts. *Brooks v. State*, 298 Ga. 722, 724 (2016).

The court first found that the evidence was "relevant to show identity because of the unique similarities present" between the two shootings. The court then found, in reference to the second

---

[10] Rule 404(b) provides, in relevant part:
Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

prong, that "[t]he probative value of this evidence is not substantially outweighed by the danger of unfair prejudice" because the "similarities increase the probative value" and the "danger of unfair prejudice is lessened by the fact that the testimony will be focused on identifying [Miller] as the user of the phone number used to contact [Harris] on the night of the charged murder and how … Cunningham is able to make that identification."

The court explained that this identification evidence will "include but is not limited to [Cunningham's] familiarity with [Miller] and the shooting incident alleged." The court also noted that it would provide a limiting jury instruction to further curtail any danger of unfair prejudice. Additionally, the court determined that "[t]here is a high prosecutorial need for the proffered evidence in this case because the only available evidence to establish identity of [Miller] is the testimony of … Cunningham." As for the third prong, the court found that "[t]here is sufficient proof for a jury to find by a preponderance of the evidence that [Miller] committed the prior shooting of … Cunningham" because "Cunningham had [Miller]'s phone number and had known him for roughly three to four years. They had been in contact with one another on more than one occasion."

Finally, the trial court recounted the evidence offered by the State regarding Cunningham's familiarity with Miller – including that she had his -8300 number saved in her phone; that she knew the vehicles he drove, recognized his build, and knew that his name started with a "J"; and that she confidently identified him in a photographic lineup as the man who shot her.

The trial court determined that "[t]he evidence … offered for admission by the State demonstrates a modus operandi of [Miller]" and that "the evidence offered in the uncharged act is necessary to complete the story and is inextricably intertwined

6

with the evidence regarding the charged offense." In conclusion, the court found that Cunningham's testimony "shall be admissible to prove the identity of [Miller]" under Rule 404(b).

The trial court granted a certificate of immediate review, and we granted Miller's interlocutory application.

2. *Analysis*

Miller argues, and the State concedes, that the trial court abused its discretion in admitting the Cunningham shooting evidence (i) for the purposes of proving Miller's identity as Harris's shooter, and (ii) as intrinsic evidence.[11] We agree.

When other acts evidence is offered pursuant to Rule 404(b) to prove identity, it must

> satisfy a particularly stringent analysis. When extrinsic offense evidence is introduced to prove identity, the likeness of the offenses is the crucial consideration. The physical similarity must be such that it marks the offenses as the handiwork of the accused. In other words, the evidence must demonstrate a modus operandi. The extrinsic act must be a "signature" crime, and the defendant must have used a modus operandi that is uniquely his. The signature trait requirement is imposed to ensure that the government is not relying on an inference based on mere character – that a defendant has a propensity for criminal behavior. Evidence cannot be used to prove

---

[11] Specifically, the District Attorney "agrees that the trial court's order reflects an abuse of discretion," that "the trial court erred in admitting the Cunningham shooting for the purpose of proving identity in the Harris murder," and that "the trial court erred in the admission of the Cunningham shooting evidence as intrinsic evidence."

7

identity simply because the defendant has at other times committed the same commonplace variety of criminal act.

*Moon v. State*, 312 Ga. 31, 53–54 (2021) (cleaned up).

Both parties acknowledge that the trial court's pre-trial order admitting the evidence of the Cunningham shooting for purposes of identity constituted an abuse of discretion because the evidence does not show a "signature crime" or "modus operandi" for the purpose of proving Miller's identity. "Given that this type of crime was not unique to [the defendant] and because the two crimes, though similar, were not sufficiently uncommon so as to constitute a signature crime, the prior crimes were not admissible under Rule 404 (b) to prove identity." *Moon*, 312 Ga. at 54.

Moreover, to the extent that the trial court ruled that the Cunningham shooting evidence was admissible as intrinsic evidence because it was "necessary to complete the story" of the Harris shooting committed a year earlier and was "inextricably intertwined with the evidence regarding the charged offense," that ruling was also an abuse of discretion. "Intrinsic evidence is evidence that 'arises from the same transaction or series of transactions as the charged offense,' is 'necessary to complete the story of the crime,' or is 'inextricably intertwined with the evidence regarding the charged offense.'" *Harris v. State*, 314 Ga. 238, 264 (2022) (cleaned up).[12] The parties agree that the evidence that Cunningham was shot by Miller is not intrinsic to the charged crime. We agree and emphasize that there is a distinction, apparently overlooked by the trial court, between Cunningham's testimony as to

---

[12] We note that evidence cannot be both intrinsic and admissible under Rule 404(b). See *Harris*, 314 Ga. at 265–66.

8

the phone number(s) used by Miller to contact her and her testimony that Miller shot her.

Notably, Miller "cannot, and does not, dispute that the State is entitled to present evidence pertaining to the [-5309] cell phone number that contacted … Harris the night of her death." But, as Miller argues, "the State can attempt to establish some connection between [Miller] and the cell phone number **without** delving into the … Cunningham shooting" (emphasis in original). In other words, Cunningham may be allowed to testify concerning her knowledge of Miller's phone number without going further and telling the jury that Miller shot her, as evidence of her shooting is neither necessary to establish her knowledge of Miller's phone number nor admissible as identity evidence or intrinsic evidence. See *Harris*, 314 Ga. at 267–70.

Because we agree with the parties that the evidence of the Cunningham shooting is neither admissible for the purpose of proving Miller's identity nor admissible as intrinsic evidence, we vacate the trial court's order and remand the case to the trial court for further proceedings consistent with this opinion. Because the trial court's order is limited to the issues of identity and intrinsic evidence, we express no opinion as to whether the evidence may be admissible for other reasons. The parties are not precluded from seeking the admission of this evidence for any other purposes that may be supported by the evidence and the positions taken by the parties at trial.[13]

---

[13] Moreover, while the evidence of the Cunningham shooting is not admissible for the purpose of proving Miller's identity or as intrinsic evidence, our holding is limited to the facts of the shooting as alleged in the filings before this Court. It should not be construed as a holding that Cunningham is prohibited from providing testimony that connects Miller to either or both of the two

*Judgment vacated and case remanded. All the Justices concur, except Warren, P.J., not participating.*

---

phone numbers at issue (-5309 and -8300). Accordingly, to the extent the State wishes to introduce testimony from Cunningham that these numbers were used by Miller and that she has knowledge of that fact, our ruling here would not prohibit that.